# Dundovich *v.* State of Indiana.

[No. 23,852.   Filed June 7, 1921.]

1. APPEAL.—*Questions Reviewable.—Discretionary Decision of Trial Court.*—The Supreme Court, as an appellate tribunal decides questions of law only, so that a discretionary decision of the trial court is not reviewable on appeal unless that court has clearly abused its discretion.   p. 607.

2. CRIMINAL LAW.—*Appeal.—Review.—Incompetency or Gross Negligence of Defendant's Counsel.*—Incompetency or even gross negligence of the pauper attorney in the performance of his duty to his client, even in a prosecution for murder in which defendant had been found guilty and was sentenced to suffer death, would not alone justify the court on appeal in disturbing a presumed correct final action of the trial court.   p. 607.

3. CRIMINAL LAW.—*Appeal.—Review.—Decision of Trial Court on Question of Fact.—Conclusiveness.*—Where the decision of a question, as whether defendant in a criminal prosecution was prevented from having a fair trial by reason of surprise, is submitted to the trial court on inferences to be drawn from evidence or facts in their nature evidentiary and warranting more than one inference, the trial court's conclusion is final.   p. 607.

4. HOMICIDE.—*New Trial.—Grounds.— Surprise.— Statutes.*—In a prosecution for murder, the introduction of evidence which was clearly competent under the issues can furnish no ground for new trial on account of surprise under §2158 Burns 1914, Acts 1905 p. 584, §282, providing that defendant shall be granted a new trial in case of "surprise which ordinary prudence could not have guarded against."   p. 608.

5. HOMICIDE.— *Trial.— Jury Questions.— Premeditation.—* In a prosecution for murder, evidence *held* to justify the trial court in submitting to the jury the question of premeditation.   p. 609.

6. HOMICIDE.—*Murder in First Degree.—Elements.—Premeditated Malice.—* There can be no legal conviction of murder in the first degree without proof to the satisfaction of the jury beyond a reasonable doubt of premeditated malice.   p. 609.

7. HOMICIDE.—*Murder in First Degree.—Inference of Malice.—. Use of Deadly Weapon.—*In a prosecution for murder in the first degree, where the evidence was such that the jury might have reasonably inferred the intentional use of a deadly weapon in a manner likely to, and which did actually cause death, malice

may be inferred, unless such use was in necessary self-defense or upon a sudden heat occasioned by adequate provocation. p. 609.

8. HOMICIDE.—*Murder in First Degree.—Appeal.—Review.— Verdict.—Conclusiveness.*—In a prosecution for murder in the first degree, there being some evidence to sustain a finding of premeditation, the question of its weight was for the jury and the trial court. p. 611.

From Lake Criminal Court; *Martin J. Smith,* Judge.

Prosecution by the State of Indiana against Nick Dundovich. From a judgment of conviction, the defendant appeals. *Affirmed.*

*McMahon & Conroy,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* for the state.

MYERS, J.—On July 16, 1920, a grand jury of Lake county, in the court below, returned an indictment charging appellant with the crime of murder in the first degree. Acts 1905 p. 584, §347, §2235 Burns 1914. On July 22, 1920, appellant waived arraignment, pleaded not guilty, was tried before a jury, a verdict of guilty as charged was returned and, on July 30, 1920, he was sentenced to suffer death, and judgment was entered accordingly. The overruling of appellant's motion for a new trial is the only error assigned.

The grounds relied on to support the motion are: (1) The verdict is contrary to law; (2) the verdict is not sustained by sufficient evidence; (3) the defendant was, by surprise, which ordinary prudence could not have guarded against, prevented from having a fair trial.

Appellant grounds his third specification on the sixth clause of §2158 Burns 1914, Acts 1905 p. 584, §282, which provides that the court shall grant a new trial to the defendant in case of "accident or surprise which ordinary prudence could not have guarded against." The accident or surprise relied on is made to appear

by an affidavit signed by himself and the affidavit of the attorney who appeared for him at the trial. These affidavits are made a part of the motion, and with the affidavit of his said attorney on behalf of the state in opposition to the motion, are brought into the record by a special bill of exceptions. The evidence is in the record by a general bill of exceptions. The indictment was in the usual form where a revolver is used in the perpetration of the crime, and is not questioned.

We will first direct attention to the evidence, in substance, as follows: On May 2, 1920, about forty invited guests, all Croatians, were present at a wedding celebration at Croatian Hall in Gary, Indiana. The hall where the people were congregated was a one-story building with basement. The first floor was used for dancing and the basement was furnished with a stove and cooking utensils, which were used on this occasion in the preparation of the evening meal, which was served on the first floor. At about 4:30 o'clock appellant and a friend of his, both Croatians, entered the basement where nonintoxicating drinks, such as homemade grape juice and pop, were being served, although appellant's friend testified that they were serving whisky and wine they called "grape juice." Appellant and his friend took a few drinks. Witnesses testified that they began to talk about fighting, but what they said was not stated. The host was notified of their talk and he came to the basement and said: "Friends, this is no place to talk fight today, because I am getting married. I want my friends here and I want everything to be peace. If you want to talk fight, it is best for you to get out." Appellant's friend then said: "Don't be afraid, we won't start no fight." The friends then shook hands with the host and both left. They returned about 7:30 in the evening. About twenty minutes thereafter this friend of appellant and one of the guests had what

the witnesses termed "some words," but what was said does not appear. Another guest spoke to appellant, who was somewhat intoxicated, and requested him to leave the premises. Appellant replied that no one could put him out. He was again asked to go out, and some one took him by the arm, when he jerked loose and began swearing and using vile language. He was then told that he must go out. It was then the host appeared on the scene and said: "Listen here, you was here this afternoon and I told you don't come here any more. You have a drink, pop or grape juice, and then go out," and further saying that he had invited his friends and their families and he did not wish to have any trouble. He then went away. They made no effort toward getting out. A guest then approached them and asked: "Was they invited in here?" "Mister, who invited you in this place?" Appellant said: "I will show you the man in a minute." He looked around and said: "Well, nobody didn't invite me and it ain't your business." The guest then said, "Nobody come here to have any trouble and we ask you like a man to get out when you are ordered out. You are not invited in the place and don't start anything in here." Two or three of the guests then went up to appellant and asked him to go out. Appellant then stepped back and put his hands in his pockets. One of the guests said: "What is the use of putting your hands in your pocket? You ain't going to butcher anybody." They then stepped up to him, took hold of each arm and said: "You must go out." He jerked loose, put one hand in his hip pocket, took out a 38-caliber revolver and immediately fired, the powder burning the trouser leg of one of the parties who then had hold of him. The bullet struck George Svastovich, who was about six feet away, entering his right side below his ribs and above his hips, passing through his body, severing his intestines in fourteen

places, and from which wound he died the following morning. The deceased had just entered the basement and had no knowledge whatever of any quarrel, or of the attempt to remove appellant, prior to the firing of the fatal shot. The gun was taken away from appellant who was pushed out of the basement door into the yard. The Gary police department was notified, and when the police arrived they found appellant lying down in the yard which was surrounded by a fence ten or twelve feet high. Appellant was assisted to his feet and he walked to the patrol wagon, and when asked why he did the shooting he shrugged his shoulders and refused to answer. The evidence further tended to show that appellant had been drinking intoxicants, but there was no evidence indicating that he did not realize what he was doing or had done.

Eight witnesses were examined on behalf of the state and one, the party who accompanied appellant that evening, on behalf of the defense.

This general statement of the case, as made by the evidence, may be considered in connection with the affidavits heretofore mentioned.

In substance, appellant's affidavit states that he is a Croatian and does not speak or understand the English language understandingly; that he did not have, nor has he now, any means or property with which to employ counsel or to prepare a defense to the charge made against him, nor has he any friends or relatives to lend him any assistance; that in the trial court his defense was referred to the pauper attorney. Appellant further states that he has been confined in the county jail of Lake county continuously since the killing of Svastovich, and that his only opportunity to talk with the attorney so furnished him was about two days before his trial and, as he could not talk English sufficiently to fully explain his defense, and not having an

interpreter, he was not able to make his attorney fully understand his position. Appellant says that he advised his attorney that he was drunk at the time of the alleged shooting and had no recollection of all that transpired; that on his first visit at the wedding party he was with a man acquainted with the Croatians there and was served with intoxicating drinks and wanted to pay for them, but was told not to pay and to come back in the evening for dinner; that he left and visited other places and had wine and liquors, and in the evening, on invitation, returned with no intention of making or having any trouble, but on account of his drunkenness he could not give his attorney all the facts regarding his movements or how he came in possession of the revolver, but denied any intention of shooting the deceased or any other persons. As he had been furnished an attorney, he supposed that a full investigation of his case would be had before the trial and that all the facts and truth would be submitted to the court and jury; that to his surprise the witnesses introduced by the state made it appear that he was not very drunk, that he was not invited back on a second visit, and that he made the statements attributed to him at the time of the shooting. He did not know that his attorney had not investigated his case prior to the trial, or the facts which he had told his attorney, until his attorney made the statement to the jury that he had fulfilled his duty in having facts as the state might adduce them, or as his attorney might adduce from the state's witnesses, without making or causing to be made prior to the trial an independent investigation of his case; that on the advice of his attorney he did not take the witness stand and supposed that was the proper practice; that, if the full facts in the case had been brought to the attention of the jury, a reasonable doubt, as to whether or not defendant purposely and with premeditated malice mur-

dered the deceased, would have been produced on the minds of the jurors.

The affidavit of appellant's attorney, among other things, stated that under his contract with the county for $198 per year he had been called upon to defend more than twenty-five criminal cases in the criminal court of Lake county, four of which, including this one, were capital cases; that he had no means or money with which to investigate the facts of this case or seek and find witnesses; that his office was at Crown Point and the scene of the alleged crime was in Gary, where all the witnesses to the transaction resided; that two days before the trial he called on appellant who advised him that at the time of the shooting he was drunk and had no recollection of all that transpired; that affiant did not fully understand appellant, who spoke English brokenly, and he was not able to obtain an interpreter at the interview; that he did not feel justified in spending time and money in investigating the truth of appellant's statement, but believed that his duty was fulfilled in having the full facts as the state might adduce them, or as might be adduced by this affiant as such attorney from the state's witnesses, and affiant informed the jury in substance that his function as such lawyer had been performed under his contract.

Appellant's attorney in the trial court is not appearing for him in this court. It is therefore apparent that some arrangements have been made whereby appellant has been able to induce counsel of high standing in the profession and well learned in the law to prepare and present his case to this court on appeal.

The ingenuity of counsel in their attempt to show error of the trial court in failing to see that appellant had a fair and impartial trial, on the theory of incompetency or gross neglect of appellant's counsel in the performance of his duty to his client in that court, is

not without some persuasive force, and especially so were this a commutation proceeding.

The object of the affidavits was to bring to the trial court's attention the circumstances which occurred during the progress of the trial and obviously apparent to the court, supplemented by other facts, and together, in the opinion of counsel, sufficient, under §2158, *supra,* to require the court to grant appellant a new trial.

To see that a fair trial is had in obedience to the law of the land is one of the highest responsibilities of a trial court, and the failure to perform that duty

1. may be a subject for review on appeal. However, it must be kept in mind that this court, as an appellate tribunal, decides questions of law only; hence a discretionary decision of the trial court is not reviewable on appeal unless that court has clearly abused its discretion. As we shall hereafter see, specification 3 must be construed as a request for discretionary action rather than imperative action. If it could be said that appellant was represented by counsel in name only; that he was without active defense, which was known to the trial court, and from aught appearing, the court was uninterested in the result of the trial, notwithstanding the gravity of the offense charged, we would have a record strongly appealing for affirmative action, but essentially insufficient, in that there is practically no affirmative showing that a different result would likely be obtained from a retrial.

Incompetency or even gross neglect of counsel in the performance of a duty to his client, even under the circumstances here disclosed, would not alone jus-

2. tify this court in disturbing a presumed correct final action of the trial court. Appellant, as now represented, has not given the name of a single

3. witness or pointed to any evidence he could produce or facts he would be able to establish tend-

ing to prove a defense to the charge, or that would probably lower the degree of homicide, nor' has he particularized circumstances favorable to him which could have been produced at the trial by greater activity on the part of his counsel, nor wherein the court's action or failure to act affected the verdict. He supports his surprise by generalities and conclusions from which the court is to draw inferences. Under this showing he must be regarded as within the rule that, where the decision of a question is submitted to the trial court on inferences to be drawn from evidence or facts in their nature evidentiary and justifying more than one inference, that court's conclusion is final. He does say that he was surprised at some of the evidence adduced by the state, but he in nowise challenges its validity or admissibility. To meet this evidence he relies upon a speculative possibility that "if the full facts had been made and investigated, the witnesses produced by the state could have been confronted with facts and circumstances sufficient to raise in the minds of the jurors a reasonable doubt as to whether or not defendant purposely and with premeditated malice murdered the decedent named in the indictment." The most that can be said for appellant's affidavit in this particular is that all of the facts and circumstances pertaining to his intoxication at the time of the shooting would tend to contradict the witnesses who testified that he "was not very drunk" and "that he was not invited back on a second visit."

The testimony to which appellant refers was clearly competent under the issues. This being true, such evidence furnishes no ground for surprise. *Gard-* 4. *ner* v. *State* (1884), 94 Ind. 489; *Bingham* v. *Walk* (1891), 128 Ind. 164, 27 N. E. 483; *Working* v. *Garn* (1897), 148 Ind. 546, 47 N. E. 951; *Morel* v. *State* (1883), 89 Ind. 275. Moreover, appellant's

counsel in his affidavit filed by the state in opposition to the motion, states that: "After going over the facts with said defendant he told said defendant that he did not believe his evidence would help him any; that during said trial, after the state rested its case, he talked with said defendant and advised him that he could testify now and tell the court and jury anything he had to tell about the case; that the defendant then informed him he did not want to testify."

Conceding that the proper practice requires a party who is surprised at the testimony of a witness to move for a continuance on account of such surprise, which was not done in this case, and that a "strong and clear case must be made before a reversal will be grounded upon such cause." (*Kelley* v. *Kelley* [1894], 8 Ind. App. 606, 611, 34 N. E. 1009). Still under the circumstances of this particular case we would not be inclined to a strict enforcement of this rule, if there was, in law, any real substantial grounds shown upon which to base a surprise.

Appellant's second ground for a new trial is based upon the claim of insufficient evidence to show the essential element of premeditation. From a 5-7. synopsis of the evidence already given, it is apparent that the court was justified in submitting to the jury, under proper instructions, the question of premeditation. True, without proof to the satisfaction of the jury beyond a reasonable doubt of premeditated malice, there could be no legal conviction of murder in the first degree. In the instant case the evidence was such that the jury might have reasonably inferred the intentional use of a deadly weapon in a manner likely to, and which did actually cause death. Under such circumstances, malice may be inferred unless such use was in necessary self-defense, or upon a

sudden heat occasioned by adequate provocation. *Mc-Dermott* v. *State* (1883), 89 Ind. 187; *Brown* v. *State* (1897), 147 Ind. 28, 33, 46 N. E. 34; *Bridgewater* v. *State* (1899), 153 Ind. 560, 55 N. E. 737; *Coolman* v. *State* (1904), 163 Ind. 503, 72 N. E. 568. In *Welty* v. *State* (1912), 180 Ind. 411, 422, 100 N. E. 73, it was said: "That malice may be presumed or inferred from the character of the act, the manner and circumstances of its execution, and from the character of the weapon used."

In this case there is no claim that the shooting was done in self-defense, and the sudden heat rests upon the provocation from being told that his presence was not wanted, followed by an attempt to forcibly eject him, notwithstanding his announcement that: "There is no man who could put me out." Appellant is shown to have used vile language, but it does not appear to whom, if any one, he addressed this language. At least three different persons endeavored to persuade him by gentle means to leave the building. This was done after his announced purpose not to go. All of these circumstances were before the jury, and from which the jury might consider or measure the time appellant had to formulate a conclusion as to his further actions, as bearing upon the question of premeditation. "Premeditation implies that the slayer had time and opportunity for deliberate thought; that after his mind conceived the thought of taking the life he meditated upon it and formed a deliberate determination to do the act; but there need be no appreciable space between the formation of the intention to kill and the killing. The formation of the intention to kill and the killing may be instantaneous, as successive thoughts. After such a determination is so formed, and then carried into execution, no matter how soon thereafter, it is murder in the first degree; otherwise it is not." This quotation is

taken from an instruction approved by this court in the case of *McDermott* v. *State, supra,* and the jury was so instructed in the present case. See also, *Aszman* v. *State* (1890), 123 Ind. 347, 352, 24 N. E. 123, 8 L. R. A. 33.

Premeditated malice is the very essence of the crime with which appellant was charged and convicted. The question of premeditation as it comes to us is af-

8. firmed by the verdict of conviction approved by the trial court. This conclusion of the jury and the trial court must be taken by this court to mean that, beyond a reasonable doubt, appellant determined in his mind, first, to take life, and second, that he had time and opportunity for premeditation; or, in other words, that time for reflection intervened between the thought to kill and the actual perpetration of the act of taking life. There being some evidence to sustain a finding of premeditation, the question of its weight was for the jury and the court trying the case.

Upon a careful consideration of this entire record, and confining ourselves to the legal principles which must govern the questions presented by this appeal, we are prohibited from disturbing the judgment of the trial court.

Judgment affirmed.