HULBURD *v.* STATE OF INDIANA.

[No. 30,326. Filed March 25, 1964. Rehearing denied October 13, 1964.]

*Warren R. Everett* and *N. George Nasser,* both of Terre Haute, for appellant.

*Edwin K. Steers,* Attorney General and *David S. Wedding,* Deputy Attorney General, for appellee.

MYERS, J.—Appellant was indicted for murder in the first degree. He pleaded not guilty and was tried before a jury which returned a verdict convicting him of the charge. He was sentenced to life imprisonment in the Indiana State Prison. He assigns as error the overruling of his motion for new trial and the overruling of his motion for extension of time within which to file an amended motion for new trial. The motion for new trial alleged that the verdict of the jury was

contrary to law and was not sustained by sufficient evidence.

The evidence most favorable to appellee is as follows: About 1:00 a.m. on December 28, 1961, appellant arrived at a restaurant known as Chuck's Supper Club, in Terre Haute, Indiana. When he entered, he was told by Chuck Miller, who operated the restaurant, that if he had "that pistol" on him, he had better take it home. It appears that a few weeks previous to this, in the parking lot behind the restaurant, appellant had pulled a pistol out and shot it in the air, causing a disturbance. Appellant laughed this off and went in and sat down on a stool at the counter. Nellie Corby, the deceased, and another girl came in between 1:15 and 1:30 a.m. They sat at a table near where appellant was seated. Shortly afterward, appellant got up and left by the front door. The girl seated with Nellie began talking in a loud, noisy and vulgar manner. She was apparently intoxicated. Miller warned them several times and finally told them to leave the restaurant. Nellie left by the front door anywhere from fifteen to twenty minutes after appellant had departed. She was seen walking north on Ninth Street by herself.

Appellant was walking south on Ninth Street when he heard some one call "Hey, you." It was Nellie, who was standing north of the restaurant. There was a conversation between them wherein she invited him to her place for a drink and he agreed. They started to walk across the railroad tracks and came to the intersection of Spruce and Ninth Streets. There, according to the signed statement of appellant, as they started to cross the intersection, she slipped in the snow which was on the ground and he attempted to grab her to

prevent her from falling. She told him to keep his "crummy" hands off of her and started to hit him with her purse. Appellant had a 32-caliber Walther automatic pistol which he was carrying in his waistband. He pulled it out in order to scare her. He gave several different versions to the police as to what happened then. The gun went off shooting and killing her. He claims it was accidental and unintentional. After she fell to the ground, he saw blood and that she was lying very still. The next thing he did was to pick her up and carry her about half a block to an alley where he placed her body at the entrance to a garage. At that time he left. The body was discovered there a few hours later.

Appellant did not testify on his own behalf, but three different statements, dated December 31, 1961, January 2, 1962, and January 24, 1962, were signed by him and admitted into evidence.

Appellant argues that as a matter of law the jury could not infer that the shooting of Nellie Corby by appellant was premeditated or malicious, so that he was not guilty of first-degree murder. However, we find that from a review of the evidence the jury could have arrived at such a verdict. There was no dispute over the *corpus delicti*. Nellie Corby was found dead as the result of a 32-caliber bullet which entered her head above the left ear and came out of her neck. The shot was downward in direction. There were no visible powder burns on her head. An F.B.I. laboratory technician stated that with this type of automatic pistol, if it were fired at a distance of under three-and-a-half to four feet, powder burns would be expected. The jury could have drawn the inference from this testimony that she was shot from a distance of more than three-and-a-half to four feet. A physician testified

that in his opinion she was already on the ground when shot.

In his statement of January 2, 1962, appellant said in part as follows:

"I knew she was intoxicated and when she started to fall, I grabbed her to keep her from going down. When I did this she seemed to go into a rage, cursing me and hitting me with her purse. I guess she was under the impression I was trying to attack her or rob her or something. It was then that I pulled from my waistband with my right hand the gun I was carrying and this was when I worked the sliding mechanism on the gun to put the shell into the chamber and the gun in firing position. When I did this it didn't seem to frighten her and she reached toward the gun. I pulled away from her. She was still swinging her purse. I became panicky and fired the gun. The woman then dropped what seemed to be right at my feet. Just before the gun was fired, she was approximately an arms distance plus the length of her purse away from me for she was still swinging it. When the gun was fired, she had grabbed my hand and I pulled back, pulling it away from her and this is when it fired."

In the statement of January 24, 1962, he stated in part:

"When I walked out the front door I did not see anyone and started to walk south on 9th Street. As I got in front of 526 North 9th Street I heard someone calling out as if they were calling me. I turned and there was a woman standing near the curb just to the north of Chuck Miller's. I didn't know the woman and wasn't sure she was calling me so I walked a few more feet and was in front of 522 North 9th Street and when I looked around I saw that the woman was fairly close to the Pennsylvania Railroad tracks. She was alone so I thought perhaps it might be someone I had known so I decided to go and see who it was. The woman was still walking north on 9th Street

and I continued after her and finally caught up with her on the north side of Spruce Street, a few feet west of where 9th Street continues north. We walked along talking, I was walking to her left. When we reached the corner she paused for a moment, I then told her I had some whiskey and suggested that we go to her place. She answered and became irritated and I don't know just what she did say but she turned and started off the curb. I knew she was intoxicated and when she started to fall, I grabbed her to keep her from going down. When I did this she seemed to go into a rage, cursing me and hitting me with her purse.

"I guess she was under the impression I was trying to attack her or rob her or something.

"It was then I pulled out the gun I had in my waistband with my right hand, when she saw the gun she grabbed for it, she got hold of my right arm. The gun didn't seem to scare her at all and when I pulled away from her I worked the sliding mechanism to put the gun into firing position, during this time she was still fighting me by swinging her purse. She again grabbed at the gun and again grabbed my arm. I pulled away from her and she was falling when the gun went off. She fell at my feet and lay quiet and still. I bent down over her and the light from the street light was bright enough that I saw blood on the left side of her head and realized that she had been shot, she was laying on the pavement on 9th Street on the north side of Spruce Street and the best I can remember it was almost under the street light. I picked her up and felt sure she was already dead."

The fact that appellant admits he pulled an automatic pistol from his waist band and tried to scare her was enough to inform the jury of malice and intent on his part when its use caused her death. *Dobbs* v. *State* (1957), 237 Ind. 119, 143 N. E. 2d 99; *Haley* v. *State* (1956), 235 Ind. 333, 133 N. E. 2d 565; *May* v. *State* (1953), 232 Ind. 523, 112

N. E. 2d 439; *Stice* v. *State* (1950), 228 Ind. 144, 89 N. E. 2d 915.

Premeditation as an element of the crime comes from appellant's own statements reduced to writing and introduced into evidence at the trial. Premeditation means the formation of an intention to kill, "and the killing may be as instantaneous as successive thoughts." *May* v. *State, supra* (232 Ind. 526, 112 N. E. 2d 440).

> " 'Premeditation implies that the slayer had time and opportunity for deliberate thought; that after his mind conceived the thought of taking the life he meditated upon it and formed a deliberate determination to do the act; but there need be no appreciable space between the formation of the intention to kill and the killing ...' " *Dundovich* v. *State* (1921), 190 Ind. 600, 610, 131 N. E. 377, 381.

Appellant admits that when Nellie attacked him with her handbag, he pulled out the automatic pistol and drew back the sliding mechanism which forced a bullet in the chamber so that it was ready to fire. His last statement confirms this and indicates that she was falling when he shot her. When the bullet hit her, the pistol was far enough away from her so as not to cause powder burns. By his conscious and deliberate act of putting a shell in the pistol, thus shooting her as she fell, and perhaps after she had already fallen, the jury could have inferred premeditation. The fact that the pistol was found after appellant first denied owning it, that his trousers and jacket which he wore that night were bloody and discovered by police in a bathtub at his girl friend's house, together with other material evidence introduced by the State, corroborated his statements of guilt, all of which gave the right to the jury to find him guilty of first-degree murder. Therefore, we determine

that the verdict was sustained by sufficient evidence and was not contrary to law.

Appellant contends that the trial court erred in overruling his motion for extension of time to file an amended motion for new trial. At the trial of this cause, appellant was represented by a pauper attorney appointed by the court. The jury's verdict was returned on June 18, 1962, and appellant was committed and judgment entered on June 23, 1962. On July 11, 1962, the court ordered appellant's attorney to be paid the sum of $1,000 for his services.

On the 16th day of July, 1962, appellant, acting *pro se,* while in prison, prepared and filed a motion for new trial. It is claimed that the verdict was contrary to law and not sustained by sufficient evidence. At the same time, he filed a motion for extension of time in which to file a motion for new trial, stating that his counsel had left him and "has not and will not prepare or file a motion for new trial in this cause." He wanted new counsel appointed so as to prepare a proper motion for new trial.

Appellant's motion for new trial was in proper form and there is no allegation that appellant's counsel was negligent or incompetent. At the time counsel was appointed for appellant for the appeal, there remained two days within which such court-appointed counsel could have filed an amended or new motion for a new trial. However, counsel on appeal apparently saw no grounds for amending or changing the pending motion for new trial. Such counsel being also trial counsel, was fully aware of what grounds, if any, existed for specification in a motion for new trial.

It appears to us that the appellant had adequate counsel and proper representation in the trial court for

the purpose of filing a motion for new trial. There is no showing that the appellant has been prejudiced on appeal by failure to present further grounds for a reversal. We have previously said that the rich and poor alike are bound by acts of their counsel in presenting matters on appeal, unless it is shown that counsel was incompetent. *State ex rel. Macon* v. *Orange Circuit Ct.* (1964), 245 Ind. 269, 195 N. E. 2d 352; (see, also, same case, 243 Ind. 429, 185 N. E. 2d 619); *Sparks* v. *State* (1964), 245 Ind. 245, 195 N. E. 2d 469, 196 N. E. 2d 748 (on reh.); *Willoughby* v. *State* (1961), 242 Ind. 183, 167 N. E. 2d 881, 177 N. E. 2d 465 (Cert. Den.), 374 U. S. 832, 83 S. Ct. 1876, 10 L. Ed. 2d 1055.

In this case there was opportunity for appellant's counsel to review, modify or amend the motion for new trial as filed, and we must assume that he was competent as there is no allegation or proof to the contrary.

Judgment affirmed.

Landis, C.J., and Achor and Arterburn, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 197 N. E. 2d 169.