HUGHLAND WARDLAW *v*. STATE OF INDIANA

[No. 571S141. Filed September 5, 1972.
Rehearing denied October 17, 1972.]

*Gil I. Berry, Jr., Buck, Berry, Landau & Breunig,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from a conviction on a charge of first degree murder in which the defendant was sentenced to imprisonment for life. IC 1971, 35-13-4-1; *Burns' Ind. Stat. Ann.* § 10-3401 (1972 Supp.).

The evidence indicates that the defendant and Louis Covington were homosexuals and that they became acquainted while both were doctor's assistants at Larue Carter Hospital in 1967 or 1968. It is admitted that they indulged in homosexual activities together. There came a time when there was an attempted separation; however, the evidence is in conflict as to which one, or whether both, desired to make the separation. The evidence further shows that their separation was not peaceable. At one time the victim attacked the defendant with a razor, and at another time, the defendant shot the victim in the shoulder. The resulting wound was not fatal.

Shortly before midnight, on August 29, 1970, the defendant drove up in front of his brother's house and engaged in a conversation with his brother. Louis Covington drove up alongside the defendant. The defendant grasped a .38 caliber pistol which he had recently purchased, threw his arm out the window and shot Covington. The bullet struck Covington in the head and he died of this wound. The defendant drove away and later gave himself up to the police. No weapons were found on the victim or in his car.

At the close of the state's evidence the defendant moved for a directed verdict on the ground that there was no evidence of premeditation. With that motion before it, the court was

confronted with directing the jury to find the defendant not guilty of murder in the first degree. Having reviewed the evidence, we are of the opinion that the jury had some latitude to determine whether or not premeditation could have existed in this case.

Sargeant Cottey testified that he asked the defendant whether or not he saw Covington with a weapon and his answer was that the defendant ". . . stated that he didn't see him with anything, but he stated that he was just scared." He also said that the defendant told him that Covington was going to kill him. The defendant testified that it looked like Covington had something in his hand that might have been a gun. However, there is no evidence that Covington made any movement to draw a gun.

It is true that the defendant may act upon appearances that seem to be threatening his life even though he may actually be mistaken. *Banks* v. *State* (1971), 257 Ind. 530, 276 N. E. 2d 155, 159, reh. den.; *Heglin* v. *State* (1957), 236 Ind. 350, 353, 140 N. E. 2d 98, 99. However, in this case the jury could have considered the fact that the appellant and the victim were not on good terms and had quarreled and fought before; that the defendant was carrying a gun for some reason and purpose; that the defendant had stated to a police officer that he did not see any gun which the victim had; and, that no gun was found on the victim or in the victim's car after the shooting. The jury had the privilege of disbelieving the appellant's story that he thought the victim had something that looked like a gun. The jury had a right to conclude from the evidence that the defendant was really not acting on what he said was an appearance of a threat to his life, but rather upon a desire to get rid of an obnoxious individual who desired to associate with him. The jury had a right to weigh and consider these pieces of evidence and reach its own conclusion and determine that the defendant had a premeditated intention to kill the victim, even though this premeditation may have existed for some

time, or only for a few seconds. *Hulburd* v. *State* (1964), 245 Ind. 672, 678, 197 N. E. 2d 169, 171-72; *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439.

*Maxwell* v. *State* (1970), 254 Ind. 490, 260 N. E. 2d 787, was a case in which the parties had quarreled and where threats of shooting each other were made. An unarmed man was shot down without apparent provocation. It was argued that the act was not done "purposely and with premeditated malice." Justice DeBruler made the following comment thereon:

"There was sufficient evidence of purpose of this case. Appellant, without struggle, pointed a gun at an unarmed man's chest and shot him. Appellant is assumed to have intended the natural and probable consequences of his act. . . . We can think of no clearer example of what it means to 'purposely' shoot another person, than the facts in this case.

Malice could properly have been inferred from the intentional use of a deadly weapon in a manner calculated to cause death." *Id.* at 492-93, 260 N. E. 2d at 789.

See also *Emery* v. *State* (1968), 250 Ind. 500, 504, 236 N. E. 2d 28, 30; *Schlegel* v. *State* (1958), 238 Ind. 374, 377, 150 N. E. 2d 563, 564; *Sparks* v. *State* (1964), 245 Ind. 245, 249, 195 N. E. 2d 469, 471, *reh. den.* 196 N. E. 2d 748; *Barker* v. *State* (1958), 238 Ind. 271, 280, 150 N. E. 2d 680, 684, *Warren* v. *State* (1963), 243 Ind. 508, 512-13, 188 N. E. 2d 108, 110; *Yarber* v. *State* (1962), 242 Ind. 616, 619, 179 N. E. 2d 882, 884; *Dobbs* v. *State* (1957), 237 Ind. 119, 123, 143 N. E. 2d 99, 101; *Powell* v. *State* (1970), 254 Ind. 200, 204, 258 N. E. 2d 633, 635.

The appellant claims error in certain testimony which the state offered in rebuttal of the defendant's testimony regarding the times when the two separated after they had ceased to live together. The evidence is controversial as to who wanted to disassociate with whom. The evidence was indefinite as to the exact time of the separation. In rebuttal, the state placed on the witness stand the brother and sister

of the victim to show certain telephone conservations and relationships between the parties during a period of time when the defendant, in his defense, had claimed he had definitely disassociated himself from the victim and from his homosexual activities.

There were a considerable number of objections from the defendant's attorney as to the rebuttal testimony, and an extended colloquy between the court and attorneys took place at one point. After objection the court asked the state, ". . . what is [the] purpose [of] this [testimony]?" and the prosecuting attorney replied:

> MR. ENDSLEY: Rebut his testimony, he says, 19 . . . I mean, I'm trying to show that there's a greater relationship here, than what he's testifying. A much more expanded relationship, and that what he's saying is not true.
>
> *   *   *
>
> .THE COURT: On the basis, Mr. Laswell, of the credibility of the defendant's witnesses, it would be question of fact, for the trier of fact to determine, after hearing both of them, and weighing their respective testimony herein. I will overrule your objection."

An examination of this colloquy and the testimony given does not convince us that the court committed any material error. The testimony went to the credibility of the defendant and to contradict him, and in our opinion was proper rebuttal.

Finally the appellant contends the evidence is insufficient to sustain a conviction of murder in the first degree. We have dealt to a large extent with this question in the matter ■ of the overruling of the motion for a directed verdict.

There is additional evidence from the defendant himself and his brother that the victim had threatened to kill the appellant. In this case, those are all matters of self-defense, as are the appearances at the time of killing which might have led the defendant to act with more speed and less deliberation when he shot Covington. *Powell* v. *State* (1970), 254 Ind. 200, 205, 258 N. E. 2d 633, 635; *King* v. *State* (1968), 249 Ind. 699, 234 N. E. 2d 465; *Robinson* v. *State* (1962), 243

Ind. 192, 184 N. E. 2d 16. We can not, on this appeal, weigh those factors. *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809; *Grimm* v. *State* (1970), 254 Ind. 150, 155, 258 N. E. 2d 407, 410; *Gaddis* v. *State* (1969), 253 Ind. 73, 251 N. E. 2d 658. These are matters for the jury to believe, disbelieve, or to give such weight as they feel under the evidence, the facts and circumstances are entitled to have. *Grimm* v. *State, supra, Greenwalt* v. *State* (1965), 246 Ind. 608, 209 N. E. 2d 254, dissenting opinion, 210 N. E. 2d 373. We may only look at the evidence most favorable to the state in reviewing a conviction. *Grimm* v. *State, supra; McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514; *Smock* v. *State* (1966), 247 Ind. 184, 213 N. E. 2d 896.

The judgment is affirmed.

DeBruler, Givan, Prentice, JJ., concur; Hunter, J., dissents without opinion.

NOTE.—Reported in 286 N. E. 2d 649.