ROBERT OWENS AND ANTHONY OWENS *v*. STATE OF INDIANA.

[No. 874S161. Filed September 18, 1975.]

*Harry Kremer, Jr.,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *J. Roland Duvall,* Deputy Attorney General, for appellee.

## I.

ARTERBURN, J.—The Appellants, Robert Owens and Anthony Owens, stand convicted of First Degree Murder while in the Commission of Robbery (Count I) and First Degree Murder (Count II). Appellants set forth twelve (12) contentions. We

first consider their claim that the competent evidence presented by the State was insufficient to sustain the conviction.

In reviewing an allegation that a verdict is not supported by sufficient evidence, this court will not weigh the evidence or resolve questions concerning the credibility of witnesses. Rather, the court will look to the evidence most favorable to the State and reasonable inferences to be drawn from that evidence. A conviction will be upheld if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686, and cases cited therein.

State's witness Jacqueline Brodley testified that on the day of the crime, October 25, 1973, she was employed as a sales clerk at the Lichtenberg Department and Hardware Store in Indianapolis. On the morning of October 25 she saw three men come into the store, one after the other. She waited on the first of these men. He picked out some items and gave the witness a one hundred dollar bill to pay for them. This witness identified Appellant Robert Owens as the man she waited on.

Miss Brodley further testified that she gave the hundred dollar bill to the store owner, Charles Caplin, who turned to put the money in a file cabinet. While the witness was ringing up the items on the cash register she heard a shot. She turned around and saw Caplin on the floor and Robert Owens standing near the counter with a gun in his hand. Appellant Robert Owens then told her to lie down on the floor and she did so. The testimony is that she then heard change being cleared from the cash register drawer and heard statements from another man, after which Appellant Robert Owens and his apparent accomplice left.

State's witness Yvonne Arlene Laswell, another store employee, testified that while Jacqueline Brodley was waiting

on one man, a second came into the store and that she assisted him. She testified that this person was not present in the courtroom, but identified a photograph of him. She heard a shot and heard her name being called out by Miss Brodley. The next thing she knew a man was at her back holding a gun to her head. She lay down on the floor at his instruction. She identified this third man as Appellant Anthony Owens. She identified the man assisted by Miss Brodley as Appellant Robert Owens.

State's witness William Lovett testified that on the morning of October 25, 1973, he went into the Lichtenberg store to make a purchase. He went to the back check-out counter and asked who was in the hardware department. Charles Caplin, who was wiping off a shotgun with a white tag on it, responded that he would be with Lovett in a minute. As Lovett turned toward the hardware department he heard a shot. He turned, saw Caplin fall and saw a man with a gun. He identified this man as Appellant Robert Owens. Lovett then testified that he lay on the floor at Robert Owens' instruction.

Police officer James Pearcy, a fingerprint technician with the Indianapolis Police Department, testified that on October 25, 1973, he arrived on the scene of the crime in question shortly after its occurrence. He proceeded to a counter where he received shirts which he was told had been handled by the person who did the shooting. He identified State's Exhibit No. 9 as the card upon which he placed a latent fingerprint taken from the shirt package marked State's Exhibit No. 12. He testified that the fingerprint taken from the package was the print on the card.

Police officer Charles Cress, also a fingerprint technician with the Indianapolis Police Department, identified State's Exhibit No. 10 as a set of fingerprints he obtained from Appellant Robert Owens on October 26, 1973. He then compared these prints to the latent print of State's Exhibit No. 9. He proceeded to show that the left thumbprint of Robert Owens

matched with the latent fingerprint from the shirt package recovered by Officer Pearcy.

Appellants point out that this testimony was opposed by direct alibi testimony. This is true, but it is not the province of this court to resolve the inconsistencies of conflicting testimony. We can only conclude that there is no merit to Appellants' sufficiency contention.

## II.

Ind. Code § 35-3.1-1-1(c), Burns § 9-903 (1974 Supp.) provides in part:

"Whenever an indictment or information is filed, the clerk of the court shall endorse thereon the date of filing and the indictment or information shall be recorded in a record book kept for that purpose by the clerk."

Appellants moved to quash the indictment in this case because it was not file-stamped. Appellants now claim error in the trial court's denial of this motion and ordering of a *nunc pro tunc* entry to show the filing of the indictment. We cannot agree. A trial court has the power and a duty to order a *nunc pro tunc* entry to correct such a clerical error. *Waterman* v. *State,* (1888) 116 Ind. 51, 18 N.E. 63; *Long* v. *State,* (1877) 56 Ind. 133. Appellants make no claims that the indictment was in fact not filed and make no showing of prejudice resulting from this clerical mistake. The motion to quash was properly denied.

## III.

Appellants contend that the delay of some six days between their arrest and arraignment violated their rights guaranteed by Article I, § 15 of the Constitution of the State of Indiana. That section provides:

"No person arrested, or confined in jail, shall be treated with unnecessary rigor."

Appellants have not explained how the delay complained of resulted in "unnecessary rigor", and we do not see that Article

I, § 15 applies here. It would be more logical to cite § 12 of Article I of the Constitution of the State of Indiana or the Sixth Amendment of the United States Constitution, both of which guarantee the right to a speedy trial. Even such interpretation of this issue is no help to Appellants here.

There is no Indiana statute or court rule which fixes a specific time within which a defendant must be arraigned. In the absence of such a specific provision, an appellant must show that such delay was both unreasonable and prejudicial in order to show violation of the Sixth Amendment right to a speedy trial. *United States* v. *Kaufman*, (1968) 393 F.2d 172 172, *cert. denied* 393 U.S. 1098, 89 S.Ct. 892, 21 L.Ed.2d 789, and cases cited therein. Appellants have neither shown that the delay here was unreasonable nor that it was prejudicial. We find no merit in this issue.

## IV.

On the day of trial the State filed a motion to amend the indictment. Appellants contend their timely objections were erroneously overruled and amendment erroneously allowed. The original indictment alleged in both counts that there was a "shooting at and against the body of said Charles Caplin with a shotgun then and there loaded with gunpowder and metal pellets." The amendment substituted the word "revolver" for the word "shotgun", and the word "bullets" for the word "pellets."

Ind. Code § 35-3.1-1-5, Burns § 9-907 (1974 Supp.) provides:

*"Amendment of charge.*—(a) An indictment or information which charges the commission of a crime shall not be dismissed but may be amended on motion by the prosecutor at any time because of any immaterial defect, including:

(9) Any other defect which does not prejudice the substantial rights of the defendant.

\* \* \*

(b) The indictment or information may be amended in matters of substance giving notice to the defendant and

with the consent of the court, at any time before arraignment. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecutor the court [may] at any time before, during or after the trial permit an amendment to the indictment or information in respect to any defect, imperfection or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense.

(e) Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the crime charged; nor may an indictment or information be amended after arraignment for the purpose of curing a failure to charge or state a crime or legal insufficiency of the factual allegations."

In *State ex rel. Kaufman* v. *Gould*, (1951) 229 Ind. 288 at 291, 98 N.E.2d 184 at 185, this court stated:

"The rule as to whether an amendment is as to substance or form can be stated thus: If the defense under the affidavit as it originally stood would be equally available after the amendment is made, and if any evidence the accused might have would be equally applicable to the affidavit in the one form as in the other, then the amendment is of form and not of substance."

*Souerdike* v. *State*, (1951) 230 Ind. 192 at 195, 102 N.E.2d 367 at 368 added this:

"Substance is that which is essential to the making of a valid charge of crime. If the amendment is such that it is not essential to the charging of a crime, then it is not one of substance but one of form."

The amendments permitted by the trial court in this case were ones of form, not substance. The theory of the case was

not changed—the allegation that the victim, Charles Caplin, had been shot remained untouched. The charged offenses remained unchanged. The date and place of the alleged crimes were unaffected. Appellants have failed to show that their substantial rights were in any way prejudiced. Accordingly, the trial court properly overruled the Appellants' objections to the State's motion to amend the indictment.

## V.

Appellants' next contention is that their right to a fair trial was violated by delay by the State in the filing and service of responses to Appellants' alibi notice and by amendment of the State's witness list on the date of trial. Objection to the State's delay in filing alibi responses is based upon Ind. Code § 35-5-1-2, Burns § 9-1632 (1974 Supp.), which reads in part:

"* * * If the defendant's notice requires such statement by the prosecuting attorney, . . . the prosecuting attorney shall file and serve such statement upon the defendant or his counsel not later than eight (8) days before the trial. * * *"

While Appellants objections at trial were well-grounded, the appropriate remedy was a continuance. This court wrote in *Reed* v. *State*, (1963) 243 Ind. 544 at 551, 188 N.E.2d 533 at 536:

"If appellant is aggrieved because less than eight days time exists after service by the prosecuting attorney as extended by the court, he should file motion for continuance showing how he would be prejudiced by the present trial date. Having failed to file motion for continuance in the case at bar, appellant has waived any question in respect thereto."

The logic applied in *Reed* to delay in filing alibi responses is also applicable to amendment of the State's witnesses list. Criminal discovery is grounded upon inherent trial court power and discretion. *State ex rel. Keller* v. *Criminal Court of Marion County*, (1974) 262 Ind.

420, 317 N.E.2d 433. It was easily within the trial court's discretion to grant a continuance when the State amended its list of witnesses. Indeed, the trial court indicated its willingness to do so in regard to both the delay in filing alibi responses and the amendment of the State's witnesses list. Nevertheless, no motion for continuance was made by Appellants. The issues are thus deemed waived.

## VI.

Appellants next contend that remarks made by the trial court judge during his voir dire examination of prospective jurors were unduly oriented toward the prosecution and that their motions to strike the jury should not have been overruled. Two threshhold problems present themselves here. The argument of this issue in Appellants' brief contains neither references to relevant portions of the record nor authorities, required under Ind. R. Ap. P. 8.3(A)(7). Nonetheless, this court considers the merits of this issue.

Among the many questions put to prospective jurors by the trial court, Appellants cite these portions as objectionable:

"First degree murder, as I've stated, requires an intentional killing with premeditation. There is law to the effect that premeditation may be as instanteous (sic) as successive thoughts. Now that sounds like an abstract principle of law. What that is saying is that once that the design to kill is formed in the mind, in other words, once the person conceives the design to kill, "I am going to kill", the space of time between the design to kill as formed in the person's mind, and the execution of the design is not important, if one says "I am going to kill that human being", he says it at one instant, then he has formed the design to kill. This, under certain law, is sufficient to premeditation, as he reaches for the gun and picks it up, and squeezes the trigger and firing bullets into the body of another human being, that is sufficient for premeditation, in other words, this is the successive thought aspect of premeditation.

\* \* \*

"Well, again, I certainly understand that you have a very negative emotional reaction to this type of crime it's a

very serious and very senseless crime; however, what we're focusing on is not the crime, but the two people who are accused of doing it, and the question is whether or not you can presume their innocence until and if the State proves the charges against them beyond a reasonable doubt. As they stand here they are innocent of any crime until proven beyond a reasonable doubt. Can you follow that?

\* \* \*

"Is there anyone who does not understand that even though the crime may be a terrible, terrible crime, killing a human being over a few dollars, that is not to direct your decision as to guilt or innocence of the defendants? In other words, the horribleness of the crime does not make them any more guilty than if it were a less horrible crime. . . ."

A trial judge has broad discretion in controlling the voir dire examination of prospective jurors. *Robinson* v. *State,* (1973) 260 Ind. 517, 297 N.E.2d 409. In the exercise of this discretion, the trial court itself may pose questions. Ind. R. Tr. P. 47. We can find no abuse of discretion here. The trial court's statements were not erroneous, nor were they unfair. Appellants' motions to strike the jury were properly overruled.

## VII.

Appellants contend that certain remarks of the prosecutor in argument and voir dire were designed to prejudice the jury and denied the Appellants a fair trial. Once again we are confronted by the absence of references to the record in the argument portion of Appellants' brief.

The remarks in question concerned a possible revolutionary motive or fervor in the murder alleged to have been committed by the Appellants. The prosecutor first mentioned such a possibility in his voir dire questioning of prospective jurors. But Appellants voiced no objection to this at the time. Moreover, trial counsel for Appellants questioned prospective jurors even further in this regard, reminding them that the prosecutor's opinion was not

evidence and further exploring possible racial prejudice. Any objections were thus clearly waived.

The prosecutor in his opening statement again referred to a "revolutionary" motive among other motives that might have existed for the killing. No objection was made to this at that time. In closing argument the prosecutor stated that the deceased was shot in "just cold blooded execution, out of hatred, out of malice, out of revolutionary fervor, or whatever." Objection was made to the word "revolutionary", to which the court remarked that it was within the bounds of fair comment. The prosecutor pursued this line of argument no further except to admit that there was "no evidence showing that this was a revolutionary motive", but emphasized what he felt was a gangster-style execution. We do not feel the cumulative effect of these remarks can be claimed as prejudicial. The contention was not pursued after the objection and we can find no abuse in the discretionary judgment of the trial court. Unless there is abuse of the discretionary control of a trial court over argument which is clearly prejudicial to the rights of the accused, the ruling of the trial court should not be disturbed. *Kallas* v. *State,* (1948) 227 Ind. 103, 83 N.E.2d 769, *cert. denied* 336 U.S. 940, 69 S.Ct. 744, 93 L.Ed. 1098. This contention of Appellants is thus without merit.

## VIII.

Appellants next contend that the trial court's overruling of Appellants' motions to strike the jury was in error. These motions made during voir dire examination of proposed jurors were based on two objections: (1) that the trial court judge had limited voir dire examination to twenty minutes for each side; (2) that black persons had been systematically excluded from the jury.

As stated earlier, a trial court judge has broad discretion in controlling voir dire examination of prospective jurors.

*Robinson* v. *State, supra.* We can find no abuse of this discretion in the twenty minute rule imposed by the trial court judge in this case. This rule did not restrict questioning of prospective jurors—it only determined the questioners. After the twenty minutes had elapsed, counsel were free to submit questions in writing to the judge, to be posed by him to prospective jurors. This was in fact done and we can find no error.

Appellants' challenge to the racial composition of the jury is based upon the fact that only one black person was seated on the jury and that this person was excused upon peremptory challenge by the prosecutor. This court stated in *Shuemak* v. *State*, (1970) 254 Ind. 117 at 120, 258 N.E.2d 158 at 159:

> "The right to an impartial trial precludes systematic and intentional exclusion of any particular class of persons. It does not necessarily mean that every jury, even though there is no intentional exclusion, must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community."

A defendant has the initial burden of demonstrating that purposeful discrimination exists. *Sanders* v. *State*, (1972) 259 Ind. 43, 284 N.E.2d 751. Appellants here  have failed to present any evidence to meet this burden.

## IX.

Appellants next contend that their in-court identification was mistaken because of suggestive line-up procedures. Counsel for the State has not seen fit to address the merits of this issue on the grounds that authorities and references to the record were not included in Appellants' argument, as Ind. R. Ap. P. 8(A) (7) requires. Despite these obstacles presented by both parties, we again address the merits of the issue.

The trial court found that, under all the circumstances here, the in-court identifications were supported by a factual

basis independent of any allegedly erroneous pretrial identification procedures. Such findings cause even a clearly suggestive pre-trial identification procedure to not be reversible error. *Ballard* v. *State,* (1974) 262 Ind. 482, 318 N.E.2d 798; *Sawyer* v. *State,* (1972) 260 Ind. 597, 298 N.E.2d 440. The trial court devoted extensive time to determining whether such a factual basis existed in this case. Appellants have presented no evidence suggesting that the trial court's finding of such a basis was in error. Accordingly, we find Appellants contention here to be without merit.

## X.

Trial counsel for Appellants timely objected to the introduction of two photographs into evidence, State's Exhibits 3 and 4. These photographs are of the victim at the scene of the crime. Both photographs were challenged as irrelevant and inflammatory. Exhibit No. 3 was objected to also on the grounds of improper authentication. Exhibit No. 4 was objected to also on the grounds that it was repetitious.

The leading Indiana case on the admission of photographs into evidence is *Kiefer* v. *State,* (1958) 239 Ind. 103, 153 N.E.2d 899, in which this court wrote at page 108, 900:

"Even though these photographs . . . may have been, to some degree, repetitious and cumulative, and are gruesome in character, they serve to elucidate and explain relevant oral testimony given at the trial and they were properly admitted for the purpose of showing fully the scene of the crime, the nature of the wounds of the victim, and the condition of the basement immediately after the crime was committed."

The photographs in this case clearly served to elucidate and explain relevant oral testimony. The testimony of a police officer and an eye witness to the crime identified the photographs and supplied sufficient authentication. The admission into evidence of a photograph is within the sound discretion of the trial court and the court's exercise of that discretion will not be disturbed unless abuse is

found. *New* v. *State,* (1970) 254 Ind. 307, 259 N.E.2d 696; *Randolph* v. *State,* (1954) 234 Ind. 57, 122 N.E.2d 860. We find no such abuse here.

## XI.

Appellants contend that State's Exhibit No. 12, a shirt in a plastic bag, was improperly admitted into evidence because a proper chain of custody was not shown, and that fingerprints taken from that bag were thus also improperly admitted. This shirt was taken into custody by a police officer shortly after the commission of the alleged crime. It is contended that a connection between the exhibit and the defendants is lacking because the police officer did not know where the property came from or who had it prior to him, because the officer did not know whether or not defendant Robert Owens even had handled the shirt, and because the shirt had not been identified by anyone at the store.

The identity of any exhibit is one of reasonable probability that it is the item which it is represented to be. *Fletcher* v. *State,* (1970) 253 Ind. 468, 255 N.E.2d 217. Three witnesses in this case testified to the fact that defendant Robert Owens had selected a shirt from the stock of the store in which the alleged crime occurred and that he took that shirt to the store check-out counter. The evidence then revealed that police officer James Pearcy arrived shortly after commission of the alleged crime, took possession of the shirt, and then took it to police headquarters. He testified at trial that State's Exhibit No. 12 was the same shirt he had taken from the store counter. The reasonable probability establishing the identity of State's Exhibit No. 12 is clearly present. The foundation for the resulting fingerprint match is thus sufficient.

## XII.

At the close of the State's evidence each of the Appellants moved for a directed verdict. The trial court overruled each

motion. Each defendant made his motions separately and as to separate counts, but the grounds, simply put, were these: that there was no proof that the deceased was a human being; that there was no proof of premeditated malice; that there was no evidence that the deceased was put in fear.

While Appellants mention this last contention, that the evidence failed to show that the deceased was put in fear, under another issue in their Statement of Facts, they do not argue this point in the argument section of their brief. It is thus waived pursuant to Ind. R. Ap. P. 8.3(A)(7) and our attention is turned to the other two grounds.

In our opinion the contention that there is no evidence that the deceased was a human being is frivolous and really merits no attention. The whole case and evidence revolve around the killing of the decedent. Witness after witness referred to him as a person. His actions and conduct as described on the witness stand had those characteristics. Finally, the testimony of Dr. Higino Eskarza with reference to the autopsy of the deceased reads in those same terms:

"Q. And after performing that autopsy, did you come to a professional opinion as to what caused the death of that human being?

A. Yes, sir."

To warrant a conviction of murder, malice must be proved beyond a reasonable doubt. But this may be proved by circumstantial as well as direct evidence. *Helms* v. *State*, (1968) 251 Ind. 335, 241 N.E.2d 244; *King* v. *State*, (1968) 249 Ind. 699, 234 N.E.2d 465; 15 I.L.E. *Homicide* § 123 (1971). Malice can be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Blair* v. *State*, (1971) 257 Ind. 342, 274 N.E.2d 532; *Jones* v. *State*, (1970) 253 Ind. 456, 255 N.E.2d 105; *Maxey* v. *State*, (1969) 251 Ind. 645, 244 N.E.2d 650.

"Premeditation has been defined as the act of premeditating in advance, deliberating on a contemplated act, or forming an intention to do something before it is done." *Blair* v. *State, supra,* at 344. The time span between the formation of an intention to kill and the killing need not be appreciable to constitute premeditation. They may be as instantaneous as successive thoughts can be. *Martin* v. *State,* (1974) 262 Ind. 232, 314 N.E.2d 60; *Hulburd* v. *State,* (1964) 245 Ind. 672, 197 N.E.2d 169.

In discussing the nature of a motion for directed verdict, this court wrote in *Taylor* v. *State,* (1973) 260 Ind. 264 at 276, 295 N.E.2d 600 at 608:

"* * * Such motion is in the nature of a demurrer to the evidence. It admits all reasonable inferences that can be drawn from the evidence and should not be granted if there is enough evidence to submit the facts to the jury for their determination. * * *"

We have already concluded that the evidence in this case was sufficient to support the jury's verdict. It logically follows that the trial court was correct in overruling the Appellants' motions for directed verdict and submitting the facts to the jury.

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 333 N.E.2d 745.