**Winifred HOLT, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 178S15.

Supreme Court of Indiana.

Feb. 8, 1980.

Vernon E. St. John, Lafayette, for appellant.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Winifred Holt was charged in four separate causes with a total of nine counts of delivering a controlled substance, Ind. Code § 35–24.1–4.1–2 (Burns 1975) (phendimetrazine), and § 35–24.1–4.1–10 (marijuana). He was tried to a jury in Montgomery Circuit Court and found guilty on all nine counts. The trial court sentenced Holt to twenty years imprisonment on each count and fined him $2000.00 on each count.

Appellant Holt presents one central issue in this appeal. He argues that the prosecution failed to prove an unbroken chain of possession of the substances in question. Therefore, he asserts, the exhibits which were made up of these substances, and the testimony of the State's chemist as to their content, should not have been admitted into evidence. He also contends that the verdict is not supported by sufficient evidence because the chain of possession was not proved.

This case involves the sale of narcotics by appellant Holt on nine different occasions. Some of the purchases were made by an informant, Raymond Roarks, under the control and supervision of Officer George Weir of the Metropolitan Enforcement Group (M.E.G.). On other occasions, Officer Weir dealt directly with Holt. Shortly after Roarks or Weir made each of the purchases, Weir would place the evidence in a briefcase in the trunk of his automobile. The following day, Weir would take the container, either a small pill bottle or a plastic bag, out of the trunk and carry it to his office. After placing the container in an envelope, Weir turned over the evidence to Lieutenant Rudolf, who was in charge of the property room located in the M.E.G. offices. Rudolf testified that he was the only person who had a key to this room and that the room was protected by an infra-red burglary prevention device. On each occasion, Rudolf would transfer the evidence to the Indiana State Police laboratory for analysis. There is no question that the materials given by Weir to Rudolf were the same materials which were transferred to the State Police, analyzed by chemists there, and returned to Rudolf.

In attacking the chain of custody, appellant focuses on the exchanges between Roark and Weir, and on the time in which Weir was in possession of these exhibits. Appellant emphasizes those fragments of Weir's testimony which indicated that it was "possible" that other police officers *could have* had access to the narcotics for a very short period of time. Clearly, however, such a showing does not require a reversal of the jury's verdict in this case.

With respect to the chain of custody of fungible items of evidence, such as narcotics, this Court has stated:

" 'An exhibit is admissible if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times. The State need not exclude all possibilities of tampering, but need only provide "reasonable assurance" that the exhibit has passed through the various hands in an undis-

turbed condition. *Kolb v. State*, (1972) 258 Ind. 469, 282 N.E.2d 541; *Guthrie v. State*, (1970) 254 Ind. 356, 260 N.E.2d 579.' *Rinard v. State*, (1976) 265 Ind. 56, 60, 351 N.E.2d 20, 23."

*Lewandowski v. State*, (1979) Ind., 389 N.E.2d 706, 710. *See Graham v. State*, (1970) 253 Ind. 525, 255 N.E.2d 652. In the case before us, Officer Weir testified that he was present on every occasion on which Roarks bought narcotics from Holt. Within a very few minutes after such purchase, Roarks turned over the evidence to Weir. In fact, Weir actually observed several of these transactions. Appellant attempts to conjure up visions of Roarks performing sleight of hand tricks before turning over to Weir what Holt had allegedly given him. Even if such a scenario were remotely possible, this is an argument that should have been made to the jury, and not to this Court on appeal. The jury was well within its province in choosing to disbelieve this version of the incidents.

Appellant also notes that Weir testified that he could not "swear under oath" that it was not possible that other police officers could have had access to this evidence. Weir stated that each morning, following a purchase from Holt the night before, he temporarily placed the exhibits on his office desk before turning them over to Lieutenant Rudolf in the property room. Weir did testify that he *could have* left the office for short periods of time on each of these occasions, and that the three other officers who *could have* been in the room during those times also *could have* had access to the exhibits. However, when Weir's testimony and the other evidence is considered as a whole, these mere possibilities do not eliminate the reasonable assurance that the exhibits passed through the chain of custody undisturbed and were not tampered with. This case presents the type of situation to which the principle of *Lewandowski* and *Graham, supra*, was addressed.

The chain of custody of these exhibits was sufficiently established to "strongly suggest" their whereabouts at all times. Thus, their admission into evidence

was proper. Therefore, the trial court also properly allowed the State's expert witness to identify the contents of these exhibits. Moreover, we think the evidence was sufficient to support the jury's finding that the substances purchased from appellant Holt were the same substances examined and identified by the expert witnesses. There was, therefore, sufficient evidence to support the jury's guilty verdict in this case.

Finding no error, we affirm the judgment of the trial court.

All Justices concur.