**John TERRY, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–379A71.**

Court of Appeals of Indiana,
Third District.

Feb. 26, 1980.

Rehearing Denied April 22, 1980.

Robert L. DeLoney, Gary, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Richard A. Alford, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellant Terry was tried by jury and was convicted of robbery. *See* IC 35–13–4–6 (Repealed). His appeal presents three assertions of error.[1]

Of principal concern is Terry's contention that the trial court should have granted his pretrial motion to dismiss because of delay in arresting him for the offense.

---

1. A fourth assigned error challenging the sufficiency of the evidence was not argued and is therefore waived.

The record discloses that on March 19, 1975, an information was filed charging Terry with a robbery that had been committed on or about March 5, 1975. Although an arrest warrant was promptly issued, Terry was not arrested until mid-November, 1977. He then appeared in court on November 14, 1977.[2]

Terry argues that a delay of approximately two and one half years between the filing of the information and his arrest was so prejudicial that it was impossible for him to receive a fair trial. Thus, he contends this delay violated his constitutional rights to a speedy trial under both the sixth amendment to the United States Constitution and article I, section 12 of the Indiana Constitution.

■ We agree of course, that the protections afforded by these provisions attached to Terry upon the filing of the information. *See, e. g., United States v. Marion* (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; *Cooley v. State* (1977), Ind.App., 360 N.E.2d 29.

In *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the Supreme Court rejected a mechanical assessment of speedy trial claims in favor of a balancing test. Indiana has applied the *Barker* analysis to claims made under our state constitution. *Wade v. State* (1979), Ind., 387 N.E.2d 1309; *Collins v. State* (1975), 163 Ind.App. 72, 321 N.E.2d 868.

*Barker* identified four relevant factors: length of delay, the reason for delay, the defendant's assertion of his speedy trial right, and prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2191.

■ We believe that on the facts presented a delay of two and one half years between the filing of the formal charge and

further proceedings is of sufficient presumptive prejudice to trigger a *Barker* inquiry into the other factors.[3]

■■ It appears that during the time in question Terry was unaware of the pending charge or outstanding warrant. He resided in Gary throughout the period and worked for at least two local employers, including the Gary Housing Authority. According to Terry he was acquainted with several Gary police officers who had seen him and with whom he had exchanged conversation during the period. In short, it does not appear from the record that he was incarcerated elsewhere, had left the area, or was attempting to evade discovery. Moreover, while there is no evidence that the state acted in bad faith to delay Terry's trial, neither is there evidence of diligence and reasonable effort in procuring his arrest. The record is silent upon these matters and is susceptible to the inference that the state was negligent. Thus, it does not appear that the delay was occasioned by good cause. Moreover, Terry suffers no adverse inference from his failure to assert his rights since he was unaware of the pendency of the charge.

We must turn then to a consideration of the prejudice to Terry. As the Court stated in *Barker,*

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because

---

2. No challenge is made to the proceedings following his arrest. Thus the issue is beyond the purview of Indiana Rules of Procedure, Criminal Rule 4, which comes into play after the filing of the information or arrest of the accused, whichever occurs later. However, *compare State v. Roberts* (1976), Ind.App., 358 N.E.2d 181.

3. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530–531, 92 S.Ct. at 2192.

the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

407 U.S. at 532, 92 S.Ct. at 2193. The first two factors are inapplicable since Terry was not incarcerated nor even aware the charge was pending. What then of the impairment of his defense? Terry makes no showing of any actual impairment. There are no factual contentions that witnesses died or were unavailable or were unable to remember. Instead, it is his position that the burden of proof rested with the state to establish he was not prejudiced (Appellant's brief, pp. 12, 13). Thus, he contends that because the state failed to produce evidence to show no prejudice, he was entitled to discharge.

■ We disagree. The burden was upon Terry to show that he had been actually prejudiced by the delay. *Wade v. State* (1979), Ind., 387 N.E.2d 1309, 1310; *Owens v. State* (1975), 263 Ind. 487, 333 N.E.2d 745, 749. *See also* the Indiana cases analogous to the situation in *United States v. Marion, supra,* where the accused complains of delay prior to arrest or the initiation of a prosecution. Indiana imposes the burden of establishing actual prejudice upon the accused. *McMorris v. State* (1979), Ind.App., 392 N.E.2d 820; *Burress v. State* (1977), Ind. App., 363 N.E.2d 1036.

■ Thus, we are constrained to find that since Terry demonstrated no actual prejudice to his defense, his claim must fail.

■ Terry next asserts error in the trial court's refusal to grant a mistrial. The basis for this contention is that he impeached the prosecuting witness' identification by showing that he and the witness had not attended high school together as the witness had testified. This evidence went to the weight and credibility to be given the identification. As such it was for the jury's consideration. It was not a ground for mistrial.

■ Finally, Terry objects to the introduction of a photograph of him as part of the state's case on rebuttal. The only objection at trial was a general one. Such

objections are insufficient to preserve error. *Dorsey v. State* (1976), Ind.App., 357 N.E.2d 280.

Affirmed.

HOFFMAN, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent.

The Sixth Amendment of the United States Constitution provides, in part, that:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . ."

This protection should not be stripped from an individual without due consideration and close scrutiny.

On March 19, 1975, the Lake County prosecutor filed a probable cause affidavit and information charging John Terry with the robbery of $83 from Arthur Baker, while Baker was working as an attendant at a Clark service station in Gary. After determining that probable cause existed to arrest Terry, the court issued a warrant for his arrest on March 19, 1975. Terry was not arrested on this warrant until mid-November of 1977—approximately two and one-half years after the information had been filed and the warrant issued. Terry contends that this delay so hindered him in preparing his defense that it was impossible for him to receive a fair trial. I wholeheartedly agree.

As the majority noted, the protections afforded by the Constitutional right to a speedy trial attached to Terry upon the filing of the information. In analyzing whether this right has been violated, the United States Supreme Court, in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, instructs us to use a balancing test which weighs the conduct of both the defendant and the prosecution. The Court explained, 407 U.S. at 530, 92 S.Ct. at 2192:

"*A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more*

than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

(Emphasis supplied).

Our Court in *Collins v. State* (1975), 163 Ind.App. 72, 321 N.E.2d 868 deemed this *Barker* test applicable to Ind.Const. Art. 1, § 12.

I agree with the majority in its position that this two and a half year delay is sufficiently "presumptively prejudicial" as to necessitate further inquiry, pursuant to *Barker, supra*. In searching the record for a reason to explain this lengthy delay, I find none. Terry was unaware of both the pending information and the outstanding arrest warrant. During this period, he went about his life in a normal fashion. He and his wife lived at 1978 Roosevelt Place until sometime in 1978 when, after separating from his wife, he moved to 595 West 20th Avenue. Both residences were located in Gary, Indiana. Terry worked at the Bud Plant in Gary for a time, and then took a job with the Gary Housing Authority. He testified that he had worked at his job with the City of Gary every day for nearly two years prior to the trial date. It is clear that this two and one-half year delay was not attributable to Terry's being incarcerated elsewhere, his use of an alias, his being a fugitive or his evading arrest. Rather, this lengthy delay was due to inadvertence, negligence or a purposeful act on the part of the State in failing to effect Terry's arrest. Even when the State finally arrested him, it was not on the basis of the pending information and the outstanding warrant. *Rather, it was because the safety sticker on his car had expired.*

In *Smith v. Hooey* (1969), 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, the United States Supreme Court addressed the issue of a State's delinquency in bringing an accused to trial. It concluded that the State, upon a defendant's demand[1], must make a "diligent, good-faith effort" to bring him before the court to trial. This Constitutionally-imposed duty was reemphasized by the Indiana Court of Appeals in *Springer v. State* (1978), Ind.App., 372 N.E.2d 466. There, this Court focused upon the State's part in occasioning the delay between the issuance of the arrest warrant and the trial date in light of the *Barker* balancing test. We said at 470–471:

"It may well be that bad faith on the part of the State renders other factors irrelevant. But the question of diligence is closely tied to questions of length of delay, negligence or legitimate purpose as opposed to bad faith, and the conduct of, and the effect of delay upon, the defendant. *It is for this reason that we conclude that the constitutional requirement for the State to use 'a diligent, good faith effort' requires examination of myriad factual considerations including, but not necessarily limited to, those set forth in Barker v. Wingo, supra,* . . . .

\* \* \* \* \* \*

"Though negligence or inadvertence is weighted less heavily against the State in the *Barker* balancing test than is purposeful delay, nevertheless, such must be considered in the equation *since the ultimate responsibility for affording speedy trial rights rests with the government rather than with the defendant. Barker v. Wingo, supra,* 92 S.Ct. at 2192." (Emphasis supplied) (Citation omitted)

While the record is silent, I will assume that the State was merely negligent in arresting Terry. *Because his home address appeared on the arrest warrant when it was issued on March 15, 1975 and because he had been employed by the City of Gary during this period, the police, obviously, had the necessary information with which to apprehend him.* Through inadvertence or

---

1. The fact that Terry did not make a "demand" because he was neither being held in prison nor under recognizance will not bar his assertion of this speedy trial right. *See Williams v State* (1979), Ind., 387 N.E.2d 1317.

poor bookkeeping procedures, it failed to do so.

Of perhaps greatest concern here is the prejudice to Terry as the result of the State's delay in arresting him. The United States Supreme Court in *Barker, supra,* at 407 U.S. 532, 92 S.Ct. 2193, said:

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. *Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.* If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. *Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.*" (Emphasis supplied) (Footnote omitted)

There can be no question that this delay denied Terry the opportunity to provide a defense to the charge. It is nearly impossible, however, to clearly particularize the prejudice resulting from this denial of a speedy trial. While the State began to build its case shortly after the crime occurred, Terry was forced to wait and begin his investigation several years later. At that point, evidence was lost and memories had faded. He will never know what evidence was lost to him during this period.

The majority concludes that Terry's right to a speedy trial was not violated because he was unable to show actual prejudice. It relies upon four cases for the proposition

that the burden was upon Terry to show that he had been actually prejudiced by this delay. In two of the four cases, *McMorris v. State* (1979), Ind.App., 392 N.E.2d 820 and *Burress v. State* (1977), Ind.App., 363 N.E.2d 1036 [2], the delay in issue was from the occurrence of the act until the issuance of the indictment or the filing of the information. The Sixth Amendment right to a speedy trial does not attach to this pre-arrest, pre-indictment period.[3] As such, it is difficult to understand how either case bolsters the majority's opinion in view of this fundamental difference between the cases. In the case at bar, the right to a speedy trial had attached to Terry; in *McMorris, supra,* and *Burress, supra,* it had not.

In *Owens v. State* (1975), 263 Ind. 487, 333 N.E.2d 745, the defendants complained of a six-day delay between arrest and arraignment as a violation of their right to a speedy trial. One can quickly see that the majority's reliance upon this case is misplaced. Not only is the 6-day delay negligible in light of the delay in the case at bar, but the time periods in question are different as well. In *Owens, supra,* the delay was from arrest to arraignment, while here, the delay was from the filing of the information and the issuance of the arrest warrant until the arrest. This difference is crucial. The defendant in *Owens* knew he was under arrest; and, accordingly, he could prepare a defense. Terry, on the other hand, was unaware of the fact that he was even suspected of committing a crime until he was arrested two and one half years later. His ability to prepare a defense at this point was sufficiently impaired as to deprive him of a fair trial.

In *Wade v. State* (1979), Ind., 387 N.E.2d 1309, there was a 15-month delay between the filing of the information and the arrest of the defendant. During this 15-month period, the defendant was incarcerated for a separate conviction which had no relation-

---

2. Both cases involved the sale of drugs. In *McMorris, supra,* the court explained that the 7-month delay was due to the ongoing drug investigation and to protect the identity of the undercover agent.

3. The protection of this Constitutional speedy trial provision attaches upon formal indictment or information or upon arrest, whichever is earlier. *United States v. Marion* (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; *State v. Roberts* (1976), Ind.App., 358 N.E.2d 181.

ship to the pending charge. After balancing the factors, pursuant to *Barker, supra,* the Court in *Wade* held that the defendant's right to a speedy trial had not been abridged. It was careful, however, to limit its holding to "under such circumstances." *Wade, supra,* at 1310.

Again, I must note that *Barker, supra,* mandates that we approach speedy trial cases on an *ad hoc* basis. Admittedly, this approach does not lend itself to easy analysis. It does, however, insure the protection of an individual's Constitutional rights. In weighing the factors in this case, I find that the two and one-half year delay was not occasioned by Terry. He was neither using an alias nor evading arrest. To the contrary, he was employed by the City of Gary. The State has a Constitutional duty to make a "diligent, good-faith effort" to bring an accused to trial. *Smith, supra; Springer, supra.* The State's conduct here was reprehensible. Terry's name and correct address were on the arrest warrant when it was issued on March 19, 1975. Why, then, was he not arrested until two and one-half years later?

The resulting prejudice to him is clear. The majority's conclusion that Terry must show actual prejudice is reminiscent of the proverbial "dog-chasing-its-tail". If Terry had been able to reconstruct the events in his life on the date of the robbery, he might have been able to structure some type of defense. As it was, this was impossible. His attorney explained:

"The Defendant, of course, was required to go back in his mind two and a half years and come up with a specific date and asked what he was going, doing on that specific date. We pointed out to the Court that the average laymen [*sic*] is well aware that you would be just about impossible to be able to recall that specific time. I think this was borne out in the trial itself. We were unable to say or to produce any evidence asking the

whereabouts two and a half years prior. He had no idea. He had no idea where he was. . . ."

In practical terms, could we reconstruct our activities on a day which occurred over two and one-half years ago? I doubt it. Where were we? What did we do? What were we wearing? How long was our hair? Were we with anyone? If so, who? In preparing a defense, such questions and answers to them are of crucial importance.

The State, here, was not handicapped by this delay. It knew that the robbery had occurred and, shortly thereafter, it had issued a warrant for the arrest of the suspect. In addition, the State had had ample opportunity to visit the scene of the crime, talk with the victim and seek possible witnesses. Before trial, it needed only consult its notes to prepare. Unfortunately, Terry lacked the benefit of such knowledge.[4]

I conclude that this delay resulted in a speedy trial deprivation and so prejudiced Terry as to impugn the integrity of the fact finding process.

Accordingly, I would reverse.

---

4. The court in *State v. Cornell* (1975), 44 Ohio Misc. 29, 335 N.E.2d 891 considered a nearly identical issue. It held that a defendant whose arrest did not occur until 35 months after the date of his indictment was denied his Constitutional right to a speedy trial. The court noted that, during this entire period, the defendant had worked and had lived in the area. He had never been notified of the pending indictment even though his name had been listed in the telephone book.