Calvin Jearle SCOTT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–383A92.

Court of Appeals of Indiana,
Second District.

March 28, 1984.

Rehearing Denied May 23, 1984.

**142**

Sheila Suess Kennedy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant, Calvin Jearle Scott (Scott), appeals his jury conviction of rape [1] alleging the trial court erred in its denial of his motion to dismiss and its rejection of his tendered instructions, and claiming insufficiency of the evidence.[2]

We reverse.

The facts most favorable to the State reveal that on September 19, 1974, S.G.W. was hitchhiking along an Indianapolis street. Scott and two other men in a blue pickup truck with a white camper shell offered S.G.W. a ride. Despite their promise to drive S.G.W. to her home, the men took her to a secluded wooded area in northern Marion County and raped her.

The men then drove S.G.W. to her neighborhood and released her.

Within one week of the incident, S.G.W. was contacted through the phone number she had given her assailants upon their demand after the rape. A meeting was arranged where Marion County Sheriff's Department Detective John Ashton (Ashton) confronted the caller, Hobart Davidson (Davidson). Davidson was not one of the rapists, but testified he obtained the phone number from one of Scott's brothers.

An information charging Scott with rape was filed on February 26, 1975. Scott was arrested on June 1, 1982. The court held a hearing on Scott's motion to dismiss the charge on July 6, 1982. At the hearing, Scott testified he had lived in the Indianapolis area for eighteen years, he could not recall specific events of the date in question but he did not commit the crime charged,[3] and he was arrested when he went to pay a fine, as he had done numerous times over the last year. S.G.W. appeared and testified she was ready and willing to appear on behalf of the prosecution at trial. Scott's motion to dismiss was denied. The case was tried to a jury, Scott was convicted of rape, and was sentenced to two years imprisonment.[4]

Indiana courts have followed the line of authority that holds the right to speedy trial attaches when a person is arrested or when he is formally charged by indictment or information, whichever occurs earlier. *See Terry v. State*, (1980) Ind.App., 400 N.E.2d 1158 *trans. denied; Stewart v. State*, (1976) 170 Ind.App. 696,

---

1. Ind.Code 35–13–4–3 (repealed 1977) (current version at I.C. 35–42–4–1).

2. Because we find grounds to reverse the trial court's judgment in its denial of Scott's motion to dismiss, we need not address the sufficiency issue, or the issue concerning his proffered instructions.

3. Scott did evidence the ability to recall his ownership of a blue 1962 or 1963 Chevy pick-up truck with plywood sides and a white truck, his brother's ownership of a blue Dodge pick-up truck, and their scheme, due to their financial straits, of using the one available license plate

on the truck which had gas in their trash hauling enterprise. However, the ability to remember ownership of a vehicle, employment, marital status, residency, etc. is memory reenforced by continued existence of the condition, state, etc. and is not comparable, after the lapse of substantial time, to the ability to remember one's whereabouts, companions, etc. on a date and time certain after more than seven years. Any inference of a present memory of a casual event from the ability to remember a reenforced status, state, etc. is unreasonable as a matter of law.

4. I.C. 35–13–4–3 (*see* Footnote 1, *supra*).

354 N.E.2d 749.[5] The speedy trial protection of the sixth amendment attached to Scott upon the filing of the information against him.

Once a defendant's right to speedy trial is placed in issue, the next step is to apply the *ad hoc* balancing test announced in *Barker v. Wingo*, (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. In determining whether the defendant has been deprived of his right to a speedy trial, the relevant factors are length of delay, the defendant's assertion of his right, the government's reason for the delay, and the prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192. Indiana has applied the *Barker* analysis to speedy trial claims made under our state constitution. *Wade v. State*, (1979) 270 Ind. 549, 387 N.E.2d 1309; *Terry.*

### A. *Length of Delay*

The delay of more than seven years between the issuance of the warrant and Scott's arrest is sufficient to trigger an inquiry into other *Barker* factors under any set of circumstances. *See Terry*, (*Barker* inquiry triggered with a delay of two and one half years between filing of formal charges and further proceedings).

### B. *Assertion of Right by Defendant*

Scott's failure to assert his right before arrest is of no consequence because he was not made aware of the pending charges prior to his arrest in June 1982.

### C. *Reasons for Delay*

■ The State failed to offer any specific reasons for the seven year delay. Sergeant Ashton testified he attempted to locate Scott for approximately one week. Unsuccessful in his efforts, Ashton turned the warrant over to the Marion County Sheriff's Department because he believed Scott had fled to the State of Kentucky. It may be surmised the matter was placed in the Kentucky authorities' hands and subsequently forgotten. In any event, the State's failure to proceed with the case was not a deliberate attempt to delay the trial in order to hamper the defense. However, it is not only prosecutorial maneuvers in bad faith that are considered in the *Barker* balance. In *Barker*, the Court noted more neutral reasons "such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Here, the State's negligence in proceeding with the prosecution is a factor that must be considered along with the prejudice to the defendant.

### D. *Prejudice to Defendant*

■ The *Barker* Court's comments concerning prejudice preface the discussion of this factor.

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. *Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.*"

407 U.S. at 532, 92 S.Ct. at 2193. (emphasis added)

There is a general presumption against the mere passage of time as prejudicing a defendant. *United States v. Marion*, (1971) 404 U.S. 307, 321–22, 92 S.Ct. 455, 463–64, 30 L.Ed.2d 468. It is for this rea-

---

**5.** The result we reach today may be attained whether analyzed under a fifth amendment due process approach (which Scott also raises in his brief) or under a sixth amendment speedy trial approach. For the sake of consistency in our state courts, we review it as a speedy trial issue.

son Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation. *Wade; Owens v. State,* (1975) 263 Ind. 487, 333 N.E.2d 745; *Terry.* However, a delay may be so prolonged the general presumption must fail and be replaced by a presumption of prejudice. The basis for this contrary presumption of prejudice is the prolonged delay itself deprives the defendant of the ability to prove prejudice. If an accused's trial does not begin until years after the crime, not only may a memory fade, it may be entirely lost, neither of which is susceptible to proof other than a statement to the effect, "I do not remember." Indeed, the difficulty a defendant encounters in establishing with particularity the elements of his prejudice reflects the extent to which he was prejudiced by the government's delay. *Ross v. United States,* (D.C.Cir.1965) 349 F.2d 210. The defendant cannot identify the alleged missing witnesses or articulate the probable substance of their testimony if he does not know of their existence because he does not have a memory of the day. This is particularly true where, as here, the delay is between the crime and arrest rather than between arrest and trial. In the latter situation the defendant is aware he must face a charge of committing a crime on a particular date and, therefore, has the opportunity to avoid the particular prejudice of a memory fade or loss by making notes, identifying witnesses and memorializing their recollection, etc. Thus, the comments of Judge Sullivan in *Springer v. State,* (1978) 175 Ind.App. 400, 372 N.E.2d 466, cited by the dissent, are appropriate up to the point in time where the State's delay has effectively deprived the defendant of the ability to prove prejudice.

At some point, then, we presume the defendant suffered actual prejudice, but the point in time is not easily quantified into a number of months or years. However, the policy reasons behind the statute of limitations and the ease of its application to each set of facts lends itself as a practi-

cal measure of time beyond which prejudice to the defendant resulting from a delay may be presumed, at least as to those crimes which have a statute of limitations.

■■■ The statute of limitations period represents a pervasive legislative judgment that it is unjust to fail to put a person on notice to defend within a specified period of time and, therefore, justice requires exposure to criminal prosecution be limited to a fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. *Toussie v. United States,* (1970) 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156. The underlying rationale of the statutes is to afford the State sufficient time to present its case, and yet protect the defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death, or disappearance of witnesses or documents, or fading memories. *Marion,* 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468. The most important limitations policy is insurance against the inevitable prejudice to the defendant occasioned by the delay.

■■■ In Indiana, the period of limitations commences the date of the crime's commission. I.C. 35-41-4-2(a) (Burns Code Ed., Repl.1979). In the instant case, the statute began to run the date of the rape, September 19, 1974. The limitations period is tolled once the prosecution against the defendant is commenced, *i.e.,* the earliest of these dates:

(1) the date of filing of an indictment, information, or complaint before a court having jurisdiction;

(2) the date of issuance of a valid arrest warrant;

(3) the date of arrest of the accused without a warrant, if the officer has authority to make the arrest.

I.C. 35-41-4-2(e).[6]

In the instant case, the statute was tolled on February 26, 1975, the date the informa-

---

6. Although I.C. 35-41-4-2 was not in effect in

1974, subdivision (e) merely codifies prior case

tion was filed naming Calvin Scott as the "accused". Technically, the prosecution was commenced well within the period of limitations. However, the filing of the information was all that occurred within the five-year limitation period applicable in Scott's case. Further action on Scott's prosecution was not undertaken until his arrest, June 1982, well beyond the passage of the five-year limitations period. The evidence reveals defendant did not know about the charges pending against him until his arrest. As a result of his unawareness of these charges, he was not put on timely notice that he would be called to account for his activities and that he should prepare a defense.

The tolling of the statute of limitations by the filing of an information is a fair application of the policies underlying the statute if the defendant is made aware of the charges. However, allowing the statute to toll upon the filing of an information, without having to apprise the accused of the charges, follows the letter, but circumvents the spirit, of the limitations statute. Certainly, the legislature did not intend such an anomalous result.

Therefore, to effectuate the statute's purpose, if the accused's arrest does not occur within the limitations period, we presume prejudice. Supportive of this conclusion, the Supreme Court in *Marion* observed, "[t]hese statutes [of limitations] provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to fair trial would be prejudiced." 404 U.S. at 322, 92 S.Ct. at 464. This is not to say a speedy trial deprivation has occurred *per se;* indeed, prejudice is but one factor in the *Barker ad hoc* balancing test. Rather, as an evidentiary matter, defendant is no longer required to produce evidence of actual prejudice; it is presumed subject to being rebutted by the State, *i.e.,* once prejudice is presumed, the burden shifts to the

State to go forward with evidence to rebut the presumption.

In the case before us, the more than seven year delay between the filing of the information and defendant's arrest triggered the speedy trial analysis. Because the arrest occurred beyond the five-year limitations period, prejudice to the defendant is presumed. Therefore, the burden to rebut the presumption of prejudice to defendant's case is upon the State. Here, however, the State has not had the opportunity to rebut the presumption because, at the trial court hearing on the motion to dismiss, the trial court applied the contrary presumption, *i.e.,* the general presumption against prejudice from the mere passage of time.

Further, we are mindful of the *Barker* admonition:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution."

*Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193.

The responsibility for the application of this *ad hoc* balancing test resides with the trial court. Accordingly, we retain jurisdiction of this appeal but remand this cause to the trial court for the purpose of conducting a new hearing on Scott's motion to dismiss. The trial court shall certify its ruling thereon to this court within ten (10) days after its entry. Any party desiring to appeal the trial court's ruling thereon shall

law. *See Gardner v. State,* (1903) 161 Ind. 262, 68 N.E. 163 (if prosecution were by information, commencement of the action, for purposes

of tolling the statute of limitations, occurred when the information was filed with the clerk).

do so by filing a supplemental record with the clerk of this court on or before thirty (30) days after the trial court's ruling on the motion to dismiss. Thereafter, the appealing party may file a supplemental brief on or before thirty (30) days after the filing of the record with this court; the opposing party shall have an additional thirty (30) days to file an answer brief; the appealing party shall have an additional fifteen (15) days to file a reply brief.

BUCHANAN, C.J., dissents, with opinion.

SULLIVAN, J., concurs.

BUCHANAN, Chief Judge, dissenting.

My dissent, unlike Gaul, is divided into two parts. First, the application of the speedy trial balancing test enunciated in *Barker v. Wingo,* (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, requires an affirmance of the trial court's denial of Scott's motion to dismiss [1] because there is no legal basis for altering the well-settled principle that the defendant must bear the burden of proof of any prejudice accruing to his defense. Second, there is no legal basis for transforming the admittedly valid presumption that prejudice is not inherent in the mere passage of time into a directly contrary presumption.

It is true that the seven-year delay between the issuance of the warrant and Scott's arrest triggers a *Barker* type analysis. So Scott's failure to assert his speedy trial right before his arrest is of no moment inasmuch as his uncontradicted testimony shows that he was unaware of the pending charge. And, as the majority concedes, though the State was lax in following up on the warrant issued for Scott, no bad faith is evidenced on the part of the State.

The majority would shift the burden of proof of prejudicial delay to the State. The law is well settled that the burden of showing prejudicial delay is upon the defendant.

*McKrill v. State,* (1983) Ind., 452 N.E.2d 946; *Owens v. State,* (1975) 263 Ind. 487, 333 N.E.2d 745; *Terry v. State,* (1980) Ind. App., 400 N.E.2d 1158, *trans. denied.* In *Terry, supra,* the defendant's speedy trial claim was rejected, despite a two and one-half-year delay between the issuance of the warrant and his arrest, because there was no showing that the defendant was actually prejudiced by the delay. *The mere passage of time is not the crucial factor.* The critical consideration is whether prejudice to the defense accrues as a result of a delay. Indeed, there is a general presumption against the mere passage of time prejudicing a defendant. Yet, the majority now concludes that a delay may be so long that a new presumption of prejudice arises full-blown to replace the general presumption of nonprejudice. Our inquiry under *Barker, supra,* must be concerned with the qualitative prejudice resulting from delay, not the quantity of delay involved.

The majority utilizes the statute of limitations as a benchmark for establishing when prejudice may be presumed. But the legislature has eliminated any such borrowing by the specific language used. The time period ceases to run at "the date of filing of an indictment, *information,* or complaint before a court having jurisdiction." Ind.Code 35–41–4–2(e)(1) (1976) (emphasis supplied).

The Supreme Court has identified the concerns which should confront a tribunal attempting to assess prejudice caused by delay:

"This Court has identified three such interests: (i) to prevent oppressive pre-trial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) *to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.* If witnesses die or disappear during a delay, the prejudice is obvious.

---

**1.** Scott raises a Fifth Amendment due process argument in his appellate brief; however, this argument was not raised in either his motion to

correct error or at trial and, I would treat that argument as waived. *See Thomas v. State,* (1981) Ind., 428 N.E.2d 231.

There is also prejudice if defense witnesses are unable to recall accurately events of the distant past."

*Barker, supra* 407 U.S. at 532, 92 S.Ct. at 2193 (emphasis supplied).

Mindful of these cautions, it is my assessment that Scott has failed to prove any actual prejudice to his defense. He has not shown that his defense was in any manner impaired. His motion to dismiss raised two allegations of prejudice. They are that the victim would be unavailable for trial and that he could not recall or reconstruct the events of the day of the offense. Both assertions were groundless. The victim, S.G.W., appeared at the hearing on the motion to dismiss and affirmed her willingness to appear at trial. S.G.W. did, in fact, appear at trial and was subjected to vigorous cross-examination by Scott's attorney. Though he claims he could not remember the specific events of the day in question, Scott was able to recall that he owned a blue and white pickup truck with a white camper shell, that his brother had an identical truck, that he and his brothers had a scheme to use one license plate (the number of which matched the number copied by S.G.W.) for several trucks, and that he was employed. The comments of Judge Sullivan, addressing a speedy trial claim in *Springer v. State,* (1978) 175 Ind.App. 400, 372 N.E.2d 466, are pertinent:

> "No facts are set forth supporting the assertion that ... [his] defense was impaired or that he was otherwise prejudiced. The record does not contain the names of allegedly missing witnesses nor the probable substance of their testimony. Indeed, a review of the transcript of testimony reveals but few lapses of

memory, none of which related to an essential issue of the charge. We conclude that the delay in this case did not affect 'the integrity of the fact finding process'."

*Id.* at 407, 372 N.E.2d at 471. Scott has failed to carry his burden of showing any actual prejudice to his defense.

So, I conclude the majority's application of a reversed presumption of prejudice and an altered burden of proof is without support in case law or statute. My analysis of the relevant factors under *Barker,* including Scott's failure to prove any demonstrable prejudice to his defense, leads to a conclusion opposite that reached by the majority. I would affirm the decision of the trial court.[2]

---

2. Because I would affirm, I must also address the other arguments raised by the appellant. First, Scott contends that the trial court erred by rejecting three tendered final instructions relating to lesser included offenses of rape. Scott has waived consideration of this issue because neither Scott nor his counsel signed the tendered instructions. *See Askew v. State,* (1982) Ind., 439 N.E.2d 1350, 1353. Scott's other argument is that there was insufficient evidence to sustain his conviction. In assessing his claim we do not judge the credibility of witnesses or reweigh the evidence. We look only to that

evidence most favorable to the State to determine if there was substantial evidence of probative value from which a trier of fact could have found a defendant guilty beyond a reasonable doubt. *Dooley v. State,* (1981) Ind., 428 N.E.2d 1. The evidence most favorable to the State is S.G.W.'s testimony that Scott, along with two others, forced her to engage in sexual intercourse against her will. S.G.W. identified Scott as one of the rapists. *Record* at 140. It is well settled that the testimony of the victim alone is sufficient to support a conviction of rape. *Dooley, supra* at 6.