**Frank EGUIA, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 2–184A32.**

Court of Appeals of Indiana, First District.

Sept. 19, 1984.

James P. Quinn, R. Martin Hill, Buck, Berry, Landau, Breuning & Quinn, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Ind., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Frank Eguia appeals his conviction for possession of a controlled substance in violation of Indiana Code section 35–48–4–7. We affirm.

## FACTS

On June 1, 1980, Frank Eguia was arrested for public intoxication. When he arrived at the Adams County Jail for detention, a routine inventory search of his person revealed Eguia was in possession of some capsules and pills. Analysis revealed the drugs contained the substance diazepam, a controlled substance listed on schedule IV of Indiana Code section 35–48–2–10. On July 21, 1980, Eguia was charged with the possession of a controlled substance in violation of Ind.Code § 35–48–4–7.

The defendant was scheduled to be arraigned for the possession charge on October 15, 1980, but appeared on that date without counsel. On November 17, 1980, he again appeared before the court without counsel and a plea of not guilty was entered on his behalf by the trial judge. On April 23, 1981, the defendant stated he desired counsel but could not afford an attorney and pauper counsel was assigned on May 1, 1981. At this point, Eguia's trial had been set for sometime in June and, due

to a scheduling conflict, defense counsel was granted an indefinite continuance on May 5, 1981. Subsequently, a new public defender was assigned to represent Eguia and entered his appearance on November 10, 1981. The next action taken in the case did not occur until November 23, 1982, when the prosecution moved to have a trial date set. Trial was set for April 26, 1983, and the defendant objected to this date as it was outside the one year period set by Indiana Rules of Procedure, Criminal Rule 4(C). This objection was overruled and the defendant's trial resulted in a conviction from which he now appeals. Other facts will be supplied as necessary.

## ISSUES

The defendant raises the following issues in his brief.

1. Did the trial court err in denying defendant's Motion for Discharge filed December 23, 1982, at which time defendant alleged that his right to a speedy trial and due process of law had been violated.

2. Did the court err in denying defendant's Motion for Continuance made on August 23, 1983, which motion was based on prejudicial pretrial publicity.

3. Did the court err in denying defendant's counsel's Motion to withdraw made on the date of trial.

4. Did the court err in failing to grant the defendant's request to represent himself or alternatively act as co-counsel at the trial of this cause.

5. Did the court err in denying defendant's objections to the prosecuting attorney's attempts to instruct the jury in the matter of law during *voir dire*.

6. Did the court err in denying the defendant's Motion to Dismiss the Amended Information filed in this cause.

7. Did the court err in overruling the defendant's objection to testimony relating to the contents of the film container taken from the defendant by Officer Noack.

8. Did the court err in allowing the Indiana state police chemist to testify regarding her examination of the contents of a container since the state did not show an adequate chain of custody from the defendant to her.

9. Did the court err in denying the defendant's request for a recess of the trial until the following day made at the beginning of this case in chief for the reason that a witness for the defense was not present.

10. Did the court err in overruling the defendant's objection to the prosecutor's questions relating to unrelated convictions which the prosecuting attorney asked of the defendant's character witnesses.

11. Did the court err in determining the defendant's sentence herein prior to the September 21, 1983 sentencing date.

## DISCUSSION AND DECISION

*Issue One*

The Indiana Rules of Criminal Procedure provide that a criminal defendant must be brought to trial within one year from his arrest or the filing of an information against him. Noncompliance with C.R. 4(C) requires the trial court to discharge the defendant. The text of the rule states:

"(C) Defendant discharged. No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged."

In the case at bar, the pertinent time period began July 21, 1980, the date the information was filed. Due to the defendant's failure to obtain counsel, of the period

which elapsed from July 21, 1980, to May 5, 1981, the entire delay was chargeable to the defendant except for 74 days. Also, the continuance filed by defense counsel on May 5, 1981, indefinitely tolled the running of the one year time period since it is considered delay caused by the defendant. *Dixon v. State*, (1982) Ind., 437 N.E.2d 1318; *Little v. State*, (1981) Ind., 415 N.E.2d 44. While Eguia concedes this on appeal, he argues that once the appearance was filed by his new public defender on November 10, 1981, the delay could no longer be charged to him and the one year time period under C.R. 4(C) began running again. The defendant concludes that since the next docket entry did not appear until more than a year later the one year period elapsed and he was entitled to be discharged.

■ When a delay results from the defendant's request for an indefinite continuance, the defendant must subsequently take the initiative to start the period running again. "If the defendant requests an indefinite continuance and later becomes dissatisfied that his trial has not been reset, he must take some affirmative action to notify the court that he now desires to go to trial in order to reinstate the running of the time period." (Footnote omitted.) *Moreno v. State*, (1975) 166 Ind.App. 441, 455, 336 N.E.2d 675, 684. Once Eguia filed the May 5, 1981, continuance, it was his duty to show he was ready for trial. This duty was not discharged by the filing of the November 10, 1981, continuance as this did little more than indicate a change of counsel.

■ The state's motion filed November 23, 1982, to set the case for trial could have reinstated the running of the one year time limit. However, we believe the delay up to this date was all chargeable to the defendant except for 74 days. Therefore, even if

we included the time from November 23, 1982, to the date which was set for trial, April 26, 1982, as delay charged against the state, the total number of days accrued would only be 228; far short of exceeding the one year limit.[1]

■ Eguia argues in the alternative that even if he is not entitled to protection under C.R. 4(C) his case should have been dismissed under the constitutional guarantee of a speedy trial.[2] U.S. Const. amend. 6. Our analysis of a claimed constitutional deprivation of a speedy trial is controlled by the United States Supreme Court decision in *Barker v. Wingo*, (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The factors which must be balanced to determine whether Eguia's right to a speedy trial has been violated are the length of delay, the defendant's assertion of his right, the reasons for delay and prejudice to the defendant.

■ In regard to the length of delay, the time elapsed between Eguia's arrest and his trial was more than three years. This is a sufficient amount of delay to trigger an inquiry as to whether a constitutional violation occurred. *See Terry v. State*, (1980) Ind.App., 400 N.E.2d 1158, *trans. denied.*

■ However, it appears from the defendant's tardiness in asserting his right that he had no desire to have a speedy trial. After filing an indefinite continuance May 5, 1981, the defendant waited 19 months before making any indication that he should have been tried sooner. Furthermore, on two occasions when a trial date was set the defendant moved for a continuance. Record at 32–33; 50–51. We conclude the defendant did very little in regard to asserting his right.

---

1. The defendant's trial did not actually take place until August 23, 1983. However this does not affect our computation since it was the defendant who asked that the April 26 date be continued and the defendant did not object to resetting it for August 23, 1983.

2. Although the defendant combines the constitutional argument with his C.R. 4(C) argument we believe the two arguments raise different issues and thus analyze each separately. *See State ex rel. Brumfield v. Perry Circuit Court*, (1981) Ind., 426 N.E.2d 692; *Cooley v. State*, (1977) 172 Ind.App. 199, 360 N.E.2d 29, *trans. denied.*

■ Likewise, under our consideration of the reason for the delay, Eguia does not persuade us that the passage of time resulted only from the state's inaction. Prior to the defendant's motion for an indefinite continuance much of the delay was caused by Eguia's failure to either obtain counsel or request a public defender. The defendant complains that at least part of the delay which occurred after his continuance of May 5, 1981, was filed is attributable to the state. While the state may have been negligent by not moving to set a trial until November 23, 1982, such negligence is mitigated by the fact that the delay was triggered by the defendant's motion for an indefinite continuance. Eguia was responsible for much of the delay of which he now complains.

■ Finally, the defendant has failed to show he suffered any prejudice from the delay. Instead, Eguia's brief cites *Scott v. State*, (1984) Ind.App., 461 N.E.2d 141 for the proposition that we should presume prejudice. *Scott* is, however, completely distinguishable. In *Scott* the information was filed in 1975 but the defendant was not arrested until 1982. *Id.* at 143. Judge Shields concluded that when the time between the crime's occurrence and arrest exceeds the applicable statute of limitations, despite the tolling of the statute, prejudice to the defendant from the delay may be presumed. *Id.* at 145. The present case differs drastically from *Scott*. Eguia had notice of the possession charge within two months after his arrest unlike the defendant in *Scott* who could not begin to gather evidence necessary for his defense until seven years after the fact. It is also clear that Eguia was not concerned about how the passage of time would prejudice his ability to defend himself because two of the three times his trial was set he asked that it be continued. We cannot presume prejudice in this case and in light of the foregoing we find Eguia suffered none. Accordingly, we find no constitutional violation of the speedy trial guarantee.

*Issue Two*

■ Next, Eguia argues that the trial judge should have granted a continuance on the day of trial because of pretrial publicity from a recent narcotics raid conducted by local police. Before a defendant is entitled to a continuance to reduce the effect of pretrial publicity he must show prejudice. *Resnover v. State*, (1984) Ind., 460 N.E.2d 922, 931. The drug raid publicized in the local newspaper had nothing to do with the charge for which Eguia was being tried. Eguia was neither arrested in the drug raid nor mentioned in the newspaper article. Apparently, the defendant's contention is that the publicity concerning drug related arrests in general, prejudiced the jury against him. This argument is too speculative in that any possibility of harm from the publicity is simply too remote. In light of the defendant's inability to indicate some facts akin to showing a direct connection between the charge against him and the publicized arrests prior to his trial we find the trial judge acted well within his discretion in denying the defendants request for a continuance.

*Issues Three and Four*

Next, the defendant argues the trial court erred by not allowing him to hire a new attorney or act as co-counsel.

■ On the day of trial Eguia gave notice that he desired to hire new counsel because he had become able to afford a private attorney. This request as well as a subsequent request by Eguia to make his own closing argument were both denied. In response to the defendant's argument he should have been allowed to hire a new attorney we need only recite well settled Indiana law that requests for change of counsel on the day of trial are *per se* untimely. *Dixon*, 437 N.E.2d at 1318.

■ Regarding the request to give his own final argument, we agree with Eguia that he has a right to represent himself. *Faretta v. California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. However, our supreme court subsequently

interpreted *Faretta* and determined that a criminal defendant does not have a right to act as co-counsel absent any indication that the appointed attorney is ill prepared or incompetent. *Houze v. State,* (1982) Ind., 441 N.E.2d 1369, 1371. In fact, the trial court may, in its discretion, deny a defendant's request to utilize this "hybrid approach." *Id.* Since the record shows that appointed counsel had done a "skillful" job in defending Eguia we believe the trial judge properly denied the defendant's request. Record at 356.

*Issue Five*

▮▮▮▮▮ The defendant's next assignment of error involves the acts of the prosecutor during the *voir dire* of the jury. Eguia argues that the state improperly instructed the jury regarding matters of law. He contends that it is the sole duty of the trial judge to instruct the jury concerning the law. However, the pertinent portion of the record reveals that the prosecution merely read the information to prospective jurors and discussed the elements of the offense which must be proved beyond a reasonable doubt. Record 244–250. Since it is proper for the state to bring these matters up in the opening statement we do not see how commenting on them during *voir dire* could possibly be improper. *See Large v. State,* (1928) 200 Ind. 430, 164 N.E. 263 (reading indictment during opening statement was proper); *cf. Woodford v. State,* (1980) 273 Ind. 487, 405 N.E.2d 522 (discussion of elements of offense charged was allowed).

▮▮▮▮ Eguia further argues that during *voir dire* the prosecutor misstated the law by telling the prospective jurors *mens rea* requires only that it be shown the defendant knowingly possessed the drugs. Eguia contends this confused the array since the *mens rea* required was that he knowingly and intentionally possessed the diazepam. However, any confusion was cured when defense counsel, also during *voir dire*, stated the following:

> "The prosecutor did mention or attempt to define the crime with which Mr. Eguia

is charged here today. He did omit an important element in this crime. It's the kind of an element that you are going to have to infer from the facts whether or not it's been proven. The facts that will be presented here. You are going to have to make a judgment call here and you have to make it beyond a reasonable doubt. But it is whether or not Mr. Eguia knowingly and intentionally possessed those drugs. If indeed he possessed any drugs at all. That is important because without some element of mental culpability he can't be found guilty under the laws of the State. There must be the intent to do wrong...."

Record at 256.

*Issue Six*

The initial information misspelled the substance found in Eguia's possession as *diazepan.* The prosecutor filed an amended information twelve days prior to trial correcting the error by spelling the substance with an *m;* that is, *diazepam.* The defendant argues that the amendment was improper and therefore had no effect. He concludes that his conviction for possession of *diazepan,* a substance which does not exist, was a nullity.

▮▮▮▮ An information may be amended at any time because of an immaterial defect such as a miswriting or misspelling. Indiana Code section 35–34–1–5 (1982). In *Henderson v. State,* (1980) 273 Ind. 334, 403 N.E.2d 1088, the court held that an amended information correcting the misspelling of the victim's name was immaterial and therefore proper. Likewise, in the present case the amended spelling of diazepam was properly allowed and the defendant's conviction was not a nullity.

*Issue Seven*

When Eguia was arrested for public intoxication the officer conducted a search incident to arrest to insure the defendant carried no weapons. Record at 287. Later, just before he was put in jail, Eguia was instructed to empty his pockets.

Record at 288. At this point a container was discovered which, when opened, revealed the illegal drugs. Record at 288. Eguia argues that opening the container was a search incident to arrest and was illegal because neither probable cause nor exigent circumstances were present.

■■■■ Although the defendant states that this search was incident to arrest, the record clearly shows otherwise. The search which revealed the drugs was merely an inventory of items within the suspect's possession immediately before incarceration and is an accepted administrative procedure to protect both prisoner and police officer. *Illinois v. Lafayette*, (1983) 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65. An inventory search is an exception to the warrant requirement and probable cause is unnecessary. *Id.* In *Lafayette* the United States Supreme Court held searching the contents of a container found in the possession of a suspect, pursuant to a routine inventory search immediately prior to incarceration, does not violate the fourth amendment. Therefore, the drugs found in Eguia's possession just before he was jailed were properly admitted into evidence.

### Issue Eight

The defendant next argues the state failed to establish sufficient evidence of a chain of custody during the time the pills were sent to the crime laboratory. The record shows that Richard Noack, the arresting officer, identified the container and pills at trial as among the items he seized from Eguia. Record at 289. Officer Noack testified that after seizure he placed the items in individual sealed packages with his name on the outside. Record at 290. The evidence was then stored in his personal locker until he personally delivered the items to the state police laboratory. Record at 291. Once at the lab the items were put into a vault. Record at 301. Mary Robison, a lab technician testified that when she obtained the items for testing they were each sealed individually. Record at 318. After examination, the evidence was returned to Officer Noack who put it back into his locker until the day of trial. At trial the items were shown to Ms. Robison and she testified that they were in the same condition as when she sent the evidence back to Noack. Record at 318.

■■■■ Eguia invites us to infer that somewhere along the chain some tampering could possibly have occurred. However, the state need not establish a perfect chain of custody. *Holt v. State*, (1980) 272 Ind. 544, 400 N.E.2d 130. Rather, "[a]n exhibit is admissible if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times." *Id.* Ind. at 546, 400 N.E.2d at 131. The supreme court in *Holt* further stated that more than a mere possibility of tampering must be shown to attack a chain of custody. *Id.* We believe the state established a sufficient chain of custody through the testimony of Officer Noack and Ms. Robison.

### Issue Nine

Next, the defendant contends that the trial judge abused his discretion by not granting a continuance to allow the defendant time to bring in another witness to testify for the defense.

■■■■ For us to reverse a trial judge's ruling on a motion for a continuance we must find an abuse of discretion. *Downer v. State*, (1982) Ind., 429 N.E.2d 953. When the motion for continuance was made the following discussion occurred.

"KURT YOUNG: [Attorney for defendant.] Judge before the jury is brought in. We would request the court to recess the balance of this trial, being the defendant's case until tomorrow. Mr. Eguia informs me as a matter of fact about ten minutes ago that there is a witness which may lend strength to his defense which he was not in possession of any drugs and I think in order for the Court to insure that Mr. Eguia was given a fair trial that it would be in the best interests of the State and of the defendant that this request be granted so we request a

recess of the trial until tomorrow morning.

DAN SIGLER: [Prosecutor.] We would oppose that your honor. This case has been pending for three years. If he hasn't gotten all of his witnesses out in three years he never will. I personally believe it is just a delaying tactic and the jury is here and I think we are ready to proceed in the case and I think we ought to proceeded [sic] with no delay."

Record at 330. This was the entire argument made at trial to persuade the trial judge to grant the continuance. Although both Eguia and his attorney had sufficient notice of the trial date to insure other defense witnesses were present, no excuse was offered as to why the witness in question was absent. Furthermore, defense counsel never even attempted to make a showing that the desired witness' testimony was material. *See Butler v. State,* (1951) 229 Ind. 241, 97 N.E.2d 492. Under these circumstances, it is impossible for us to find an abuse of discretion in the trial court's denial of the continuance.

*Issue Ten*

The defendant offered two witnesses who testified regarding the defendant's good character. On cross examination the trial judge allowed the state to ask these witnesses questions concerning the defendant's previous unrelated criminal convictions. Eguia now contends that questions concerning previous bad acts by the defendant should not have been allowed. We disagree.

▮ Generally, evidence of one crime may not be used to prove another. However, where the defendant chooses to place his general character at issue by evidence that he possesses good character traits, the state may refute this evidence by offering evidence of the defendant's bad character, including specific acts of prior misconduct and past crimes. *Bond v. State,* (1980) 273 Ind. 233, 403 N.E.2d 812; *Robertson v. State,* (1974) 262 Ind. 562, 319 N.E.2d 833. When Eguia presented witnesses who testified as to his good charac-

ter the "door was opened" and on cross examination the state could ask these witnesses whether they were aware of past crimes committed by Eguia.

*Issue Eleven*

▮ Finally, Eguia charges that the trial judge determined his sentence before hearing evidence at a mitigation hearing. Apparently, the defendant bases his argument on the following statement made by the trial judge:

"Well ladies and gentlemen frankly I guess I didn't contemplate the mitigation hearing at this time. Usually what we do is request a mitigating hearing we have it prior to the time the court is attempted to write a sentence. Because I think it is much more meaningful. I don't see how a court can come out here on a sentence day and hear mitigation and then sit down and write an opinion and write a sentence. *But I have considered the evidence here but I find nothing that would lead me to change anything that I had previously written before I came out here.* [Emphasis supplied.]"

Record at 408–09. This statement was made at a presentence hearing which took place on September 21, 1983, and at that time Eguia agreed that his sentence should be handed down. Record at 386. It is clear from the trial judge's statement that he properly considered evidence presented by the defendant at the hearing. Therefore Eguia's final argument has no merit.

Judgment affirmed.

NEAL, P.J., and ROBERTSON, J., concur.